**Wayne Paul BURKETT, Appellant,**

v.

**Richard CUNNINGHAM, Warden, Appellee.**

**Nos. 86–3074, 86–3121.**

United States Court of Appeals, Third Circuit.

Argued April 10, 1987.

Decided July 10, 1987.

As Amended July 21, 1987.

Rehearing Denied July 31, 1987.

George E. Schumacher, Joel B. Johnston (argued), Federal Public Defender, Pittsburgh, Pa., for appellant.

Ellen L. Cohen (argued), Blair County Dist., Attorney's Office, Hollidaysburg, Pa., for appellee.

Before SLOVITER, BECKER and GARTH, Circuit Judges.

BECKER, Circuit Judge.

These two habeas corpus appeals by Wayne Paul Burkett, arising out of three state court convictions, require us to determine whether a federal court, presented with post-conviction delay ranging from excessive to monumental, should not only deem state remedies exhausted, but also grant writs of habeas corpus on account of the delay. Each of the convictions took place in the Blair County, Pennsylvania, Court of Common Pleas, where the problem of delay seems endemic. *See infra* at 1227 & n. 48.

In No. 86–3074, we confront a delay of two years and four months between conviction and sentencing, plus several additional months of delay during the state appellate process. No. 86–3121 encompasses two separate convictions. In one, we face a three and one-half year delay between conviction and sentencing and a further, ongoing delay (approximately one year and nine months at this writing) in the commencement of the state appellate process because of the tardiness of the Blair County court system both in furnishing an opinion on post-verdict motions and sentencing and in transmitting the trial record to the Pennsylvania Superior Court. In the other, we confront an almost unbelievable situation: Burkett has yet to be sentenced, more than five and one-half years after trial and two years after a federal district court declared that Burkett's right to a speedy trial would be violated if he were not sentenced within 60 days.

As a preliminary procedural matter, we observe that in No. 86–3121 the district court used Federal Rule of Civil Procedure 60(b) to vacate and reenter its previous order of judgment, in effect extending the time for appeal, because Burkett, despite due diligence, did not learn of the entry of judgment until after expiration of the period for requesting an extension of time to appeal. Fed.R.App.P. 4(a)(5). Under the particular circumstances of the case, we

hold that the district court had the power to vacate and reenter the final order.

We also must make important threshold legal determinations. First, does the Constitution's Speedy Trial clause apply through the sentencing phase of the prosecution? We conclude that it does. Second, does the Due Process clause protect against delays in appeals as of right? We also conclude that it does. For the reasons that follow, we will affirm the district court's dismissal for want of exhaustion in No. 86–3074. We will reverse the court's dismissal for want of exhaustion in No. 86–3121, and, on those claims concerning the case for which Burkett has been sentenced but his appeal hindered, we will remand for consideration of the merits of Burkett's constitutional claims, including the delay itself. That leaves for consideration the conviction for which Burkett has still not been sentenced for five and one-half years after verdict, two years of which follow the district court's order declaring that the Constitution required sentencing within 60 days, an order predicated on a finding of a speedy trial violation which was not challenged by the county. The violation having been established as law of the case, and reinforced by the continuing delay, and the county having conceded at oral argument that the only appropriate remedy appears to be dismissal, we will remand the case to the district court with instructions to grant the writ unconditionally and discharge Burkett from that conviction.

1. Information Nos. 140 and 141 of 1981 were both filed March 17, 1981. Each charged Burkett with the felonies of burglary, rape, and involuntary deviate sexual intercourse; and with the misdemeanors of theft by unlawful taking or disposition, receiving stolen property, indecent assault, recklessly endangering another person, terroristic threats, unlawful restraint, and indecent exposure. In addition, No. 140 of 1981 charged Burkett with corruption of minors, a misdemeanor. The parties have treated 140/141 as a single case, and we shall also.

2. Information No. 161 of 1981, filed April 7, 1981, charged Burkett with the felonies of rape, involuntary deviate sexual intercourse, and aggravated assault; and with the misdemeanors of unlawful restraint, indecent exposure, terroris-

## I. PROCEDURAL HISTORY

The factual matrix of these appeals lies in the procedural history of Burkett's criminal cases. That history is extremely involved, and resolution of these appeals requires that we set it forth in detail.

### A. State Courts: Round I

Burkett was arrested on February 7, 1981 and charged in the Blair County Court of Common Pleas with the crimes later detailed in criminal actions Nos. 140 and 141 of 1981 ("140/141").[1] Six days later, he was charged with the crimes detailed in criminal action No. 161 of 1981 ("161").[2] On July 22, 1981 the prosecution moved under Pennsylvania Rule of Criminal Procedure 1100(c) to extend the 180–day deadline for commencing trial otherwise required under Rule 1100(a)(2). On October 7, 1981 the court, despite Burkett's objection and motion to dismiss, granted the prosecution's request.

In 140/141, Burkett was convicted on November 17, 1981 of some charges[3] and acquitted of others;[4] a mistrial was declared on the remaining counts when the jury hung.[5] On November 20, 1981, both sides consented to a continuance in 161. On January 20, 1982 Burkett was convicted in 161 on all counts.

Having filed timely post-verdict motions concerning both trials, Burkett was released on bail pending sentencing on February 24, 1982. After 48 days, on April 13, 1982, he was rearrested and charged with the crimes later detailed in criminal action

tic threats, recklessly endangering another person, and indecent assault.

3. The jury convicted Burkett of both counts of burglary, theft by unlawful taking, receiving stolen property, and terroristic threats. It also convicted him of corruption of minors.

4. The jury acquitted Burkett of both counts of indecent assault and indecent exposure. It also acquitted him of involuntary deviate sexual intercourse in No. 141 of 1981. The record does not reveal the disposition of the latter count in No. 140 of 1981.

5. The jury hung as to both counts of rape, recklessly endangering, and unlawful restraint.

No. 284 of 1982 ("284").[6] Burkett has been continuously incarcerated since this arrest.

On August 19, 1982 the court ordered the district attorney to show cause why transcripts of Burkett's trials should not be furnished to him at the court's expense. The record reflects no subsequent hearing or order on the matter. It appears that only transcripts for 161 were prepared at that time.

In 284, the prosecution requested and received several Rule 1100 continuances, beginning on October 1, 1982. Burkett filed motions to dismiss for lack of timely prosecution beginning on October 15, 1982. The court denied dismissal and granted further continuances on November 5 and December 29, 1982 and January 4, 1983. On January 28, 1983 Burkett was convicted of all felony and misdemeanor counts by a jury and on January 31, 1983 the court found him guilty of the charged summary offense. Burkett filed timely post-verdict motions.

At least by July 1983, Burkett was requesting trial transcripts of 140/141 and 284. App. 183. Transcripts for 284 were completed and filed in August 1983. The other transcripts were not prepared. No briefing or hearing was scheduled on Burkett's post-verdict motions in any of his cases, and under Pennsylvania law he could not be sentenced until the court had ruled on those motions.[7]

On March 12, 1984, Burkett filed a petition for a writ of habeas corpus with the Blair County Court of Common Pleas, challenging his custody in all three cases on the basis of speedy trial and due process violations and because he had still not been sentenced. A hearing on this petition was held in October 1984, after which a briefing schedule was set for 161 and 284. When no ruling was forthcoming on the habeas petition, Burkett filed for relief on similar grounds in the Pennsylvania Superior Court on December 12, 1984.[8] Burkett's brief in 284 was filed on January 23, 1985.

Meanwhile, Burkett had also sought to raise the issue of counsel's ineffectiveness in order to preserve that issue for appeal.[9] He objected to proceeding with a hearing on his post-verdict motions in 284 on January 23, 1985, because his motion concerning ineffectiveness in that action, filed September 6, 1984, had yet to be resolved. The hearing was adjourned, and an ineffectiveness hearing was later scheduled for April 1, 1985. As of March 1985, Burkett's post-verdict motions in 161 and 284 had been briefed but not argued, and no briefing had been scheduled in 140/141 because no transcripts had been filed, even though Burkett had filed yet another motion to compel production of those transcripts on January 14, 1985.

## B. Federal Courts: Round I

On March 28, 1985 Burkett filed a petition for writ of habeas corpus at W.D.Pa. Civ. No. 85–769, charging that the delay in sentencing in all of his cases violated his rights under the Speedy Trial clause. See App. at 154; Supp.App. at 3. We also construe the petition to allege a due process violation. The magistrate granted in forma pauperis status and ordered an answer on March 29, 1985. Blair County filed a timely answer, to which Burkett filed a response.

The magistrate filed a report and recommendation on May 15, 1985. Finding exhaustion excused because of inordinate delay, he discussed whether Burkett had established a speedy trial violation under the

---

**6.** Information No. 284 of 1982, filed June 18, 1982, charged Burkett with the felonies of burglary and attempted rape; with the misdemeanors of recklessly endangering another person, terroristic threats, and simple assault; and with the summary offense of harassment.

**7.** See Commonwealth v. Hill, 282 Pa.Super. 462, 422 A.2d 1385, 1387 (1980); Pa.R.Crim.P. 1123 comment.

**8.** Relief was ultimately denied by the Superior Court on August 28, 1985 and by the Pennsylvania Supreme Court on April 24, 1986.

**9.** Motions concerning counsel's ineffectiveness were filed in 140/141 on July 11 and December 2, 1984 (never ruled on); in 161 on July 11 and August 14, 1984 (never ruled on); and in 284 on July 11 and September 6, 1984 (ultimately denied April 2, 1985).

four-part test of *Barker v. Wingo*, 407 U.S. 514, 530, 92 S.Ct. 2182, 2191–92, 33 L.Ed.2d 101 (1972). The magistrate, finding lengthy delay, noted Burkett's repeated requests to be sentenced and attributed no delay to him. The magistrate found prejudice—that the delay had "caused some loss to the petitioner," *see infra* at 1223 n. 36—and that "it would appear to be a fundamental denial of the constitutionally assured right to a speedy trial to delay ruling on post-trial motions far in excess of three years." Supp.App. 11. He reasoned, however, that "it would appear appropriate to withhold any action," *id.* at 12, based apparently on an order of the Blair County Court of Common Pleas that a hearing on post-trial motions in 284 be scheduled "for the earliest possible date consistent with the calendar of this Court." The magistrate therefore recommended with respect to all of Burkett's cases that the writ be denied "unless the Court of Common Pleas fails to dispose of the post-trial motions and impose any appropriate sentence within sixty (60) days." Id.

The district court granted the parties ten days for the filing of objections to the report and recommendation of the magistrate, but no objections were filed and no extensions of time were sought. The district court adopted the magistrate's report and recommendation in full as its opinion on May 30, 1985, declaring that the Consti-

tution permitted Blair County 60 further days from that date in which to sentence Burkett.[10] App. 154. Blair County did not appeal, but Burkett did. We denied Burkett a certificate of probable cause to appeal on August 14, 1985, "without prejudice to filing a new petition in the district court." App. 155.

### C. *State Courts: Round II*

The Blair County court denied Burkett's state habeas petition (first filed March 12, 1984 as to all three convictions) on June 6, 1985. Having already denied his ineffectiveness motion in 284 on April 2, 1985,[11] the court proceeded to deny his post-verdict motions on May 8 and to sentence him on June 24, 1985. Burkett received consecutive sentences totaling 16 to 32 years, which according to the court was the maximum permitted under law.[12] The court filed an opinion with the sentencing order. Burkett's appeal was docketed in Superior Court at No. 974 Pgh 85.

In 161, post-verdict motions were denied on June 7, 1985. Burkett was sentenced on July 10, 1985, although the sentencing order was not filed until September 18, 1985. As a repeat offender, he received consecutive sentences totalling 22 to 44 years.[13] Burkett's appeal was docketed in Superior Court at No. 1089 Pgh 85. However, no opinion on post-verdict motions or sentencing was then filed,[14] without which filing

---

**10.** The district court's order reads:

It is ordered that the petition of Wayne Burkett for a writ of habeas corpus is dismissed and that a certificate of probable cause is denied, unless the Court of Common Pleas of Blair County fails to dispose of the post-trial motions and impose any appropriate sentence within sixty (60) days.

It is further ordered that in the event that the Court fails to act in accordance with this directive that the petitioner file a new petition, that jurisdiction on the merits be assumed by this Court and that an appropriate merits determination be made.

We find the language of this order far from pellucid. Given the findings of the magistrate and the district court, however, we read the order as a conditional grant of Burkett's writ. As we read the order, the new "petition" it contemplated was only a petition for enforcement. *See infra* at 1223 n. 35.

**11.** *See supra* at 1212 n. 9. Burkett's interlocutory appeal of this denial was quashed by the Superior Court on May 23, 1985.

**12.** Burkett received 10 to 20 years for burglary, 5 to 10 for attempted rape, and 1 to 2 years for recklessly endangering, consecutive to each other; plus fines totaling $300 and costs. The other offenses merged for sentencing purposes. No credit was given for time served.

**13.** Burkett received 8 to 16 years for rape, 8 to 16 for involuntary deviate sexual intercourse, 4 to 8 for aggravated assault, and 2 to 4 for terroristic threats, all consecutive to each other; plus fines totalling $800 and costs. The other offenses merged for sentencing purposes. The sentence was to commence as of July 10, 1985, with credit given for jail time from February 13, 1981, to February 24, 1982. App. 49–52.

**14.** Pennsylvania Rule of Appellate Procedure 1925(a) provides as follows:

the record could not be transmitted to Superior Court[15] and the appeal could not proceed.[16]

In 140/141, the court attempted to compel the court reporter to produce the transcripts by entering orders on May 7, 1985 ("forthwith") and on August 21, 1985 ("on or before ... August 30"). Despite the continuing lack of transcripts, post-verdict motions were heard on August 21, 1985. Despite the hearing, the court has yet to either rule on the motions or sentence Burkett.

### D. *The Instant Habeas Petitions*

Burkett filed the two instant habeas petitions on August 27, 1985. Civ. No. 85–1966 (referred to hereinafter as "No. 86–3074," its docket number on appeal) sought release for the delay in 284 and also claimed that the federal court's May 30, 1985 order giving the Blair County court 60 days to sentence him had exposed him to a severe retaliatory sentence. Civ. No. 85–1965 ("No. 86–3121" on appeal) asserted similar claims concerning both 140/141 and 161.

In No. 86–3074, by orders dated September 19 and 20, 1985, the magistrate ordered a supplemental answer, appointed counsel for Burkett, and set an evidentiary hearing that was eventually held December 23, 1985. On December 24, 1985 the magistrate recommended dismissal for want of exhaustion. After timely objections by Burkett, the district court adopted the magistrate's report as its opinion on January 15, 1986. Burkett filed a timely appeal.

The magistrate's report, adopted as the court's opinion, noted the "considerable delay" in the Blair County court. Based on respondent's statements at the hearing, however, the magistrate found that "the matter has finally been disposed of by [Blair County], and the complete record has been transmitted to the Superior Court where in the course of normal appellate procedure, the merits of the petition, including the issue of delay can be addressed." App. 134.[17]

In No. 86–3121, the magistrate filed a report on September 23, 1985 without holding an evidentiary hearing. He recommended dismissal for want of exhaustion on the basis that "the matter has finally been disposed of by [Blair County] and is presently the subject of an appeal to the Pennsylvania Superior Court where in the course of normal appellate procedure the merits of the petition, including the issue of delay can be addressed." App. 56. Burkett timely objected that he had not been sentenced in 140/141 and that his appeal in 161 could not proceed because Blair County had not transmitted the record (due September 23, 1985) to the Superior Court.[18] The district court adopted the magistrate's report and recommendation on October 15, 1985

Burkett was transferred to different prisons three times between September and November 1985. Each time he promptly notified the district court of his new address. The court sent the magistrate's re-

---

Upon receipt of the notice of appeal the judge who entered the order appealed from, if the reasons for the order do not already appear of record, shall forthwith file of record at least a brief statement, in the form of an opinion, of the reasons for the order, or for the rulings or other matters complained of, or shall specify in writing the place in the record where such reasons may be found.

**15.** "When the record is complete for purposes of the appeal, the clerk of the lower court shall transmit it to the prothonotary of the appellate court." Pa.R.App.P. 1931(c).

**16.** Pennsylvania Rule of Appellate Procedure 2185(a) provides that an appellant's brief shall be due 40 days after the record is transmitted. Rule 1931(a) provides that the lower court clerk

shall transmit the record within 40 days of the filing of the notice of appeal (here August 13, 1985). Rule 1931(b) gives the trial judge the original duty of ensuring that the record is completed and transmitted. Rule 1935 also gives, in succession, the appellate court prothonotary, the state Court Administrator, and the state Supreme Court the authority to deal with delinquency by the lower court.

**17.** Blair County counsel represented on September 26 and December 23, 1985 that the trial record (due September 1, 1985) was being transmitted to Superior Court. App. 127–28, 204. The Superior Court received the record, without which the appeal could not proceed, on January 2, 1986.

**18.** *See supra* at 1213–14 & nn. 14–16.

port in No. 86–3121 by certified mail to his correct address on September 23, 1985; it also sent communications to his correct address on October 4, October 9, October 11, and November 12, 1985, each of which assured him that "you will be advised of any decision." However, the critical final order in No. 86–3121, which was filed by the court on October 15, was sent by uncertified mail to the wrong prison; Burkett did not receive it nor did he learn of it until the December 23, 1985 hearing in No. 86–3074, despite an inquiry by mail on December 16. *See* App. 75, 175–176. On January 15 and 21, 1986, Burkett moved for reconsideration on two grounds: (1) that he had not been notified of the October 15 order, and (2) that the court had not considered his 140/141 convictions or the continuing delay in his 161 appeal. On January 17, the district court vacated its October 15 order on only the former ground; it then redenied Burkett's petition for habeas corpus on January 17 and 23, 1986. Burkett filed a notice of appeal from both January orders on February 5, 1986. This Court granted a certificate of probable cause in both appeals on October 21, 1986. Oral argument was heard April 10, 1987.

### E. *State Courts: Round III*

On the day after the instant federal habeas petitions were docketed in the district court, the Pennsylvania Superior Court denied state habeas relief based on delay in all of Burkett's cases. Burkett then took his state habeas claims to the Pennsylvania Supreme Court on September 27, 1985, which eventually denied relief on April 24, 1986.

In the direct appeal on 284, the record was transmitted to Superior Court on January 2, 1986, four months late. So that he could raise his old counsel's ineffectiveness in his direct appeal, Burkett renewed the request for new counsel that had been denied by the Blair County court. The Superior Court granted the request on April 4,

1986, remanding the case to Blair County for 30 days in which time new counsel could be appointed. After appointing new counsel on April 9, 1986, Blair County did not return the record until July 16, 1986. The appeal then appears to have proceeded normally. The Superior Court denied the appeal on January 12, 1987 and denied rehearing on February 26, 1987. Burkett's timely petition for allocatur is pending before the Pennsylvania Supreme Court.

In 161, Burkett's sentencing order was filed on September 18, 1985, and the record was due in the Superior Court on September 22, 1985. However, no opinion on post-verdict motions was filed until May 8, 1987 —a month after oral argument in this Court and as the opinion writer was completing the final draft of this opinion for circulation to the other members of the panel. Blair County has not indicated whether a sentencing opinion remains to be filed or whether the record has now been transmitted to the Superior Court.[19] The Superior Court ordered Blair County to appoint new counsel for Burkett on April 3, 1986, and it did so on April 9, 1986.

In 140/141, the first trial transcript was filed on October 22, 1985, but the final transcript was not complete until August 11, 1986. The court scheduled new hearings on post-verdict motions but has not yet held such a hearing. Shortly before oral argument in this case, the latest scheduled hearing had to be postponed again. Blair County had assigned to hear the case a judge who had been a member of the district attorney's office during the pendency of Burkett's post-verdict motions, and Burkett successfully moved to recuse the judge. At oral argument counsel indicated that the motions were currently scheduled for hearing on May 21, 1987.

Burkett also filed a new habeas petition in the Blair County court on December 22, 1986, challenging the court's continued failure to hear post-verdict motions or sen-

---

**19.** *See supra* at 1213–14 & nn. 14–16. Burkett filed suit in federal court under 42 U.S.C. § 1983 on February 10, 1985, based on the prothonotary's failure to transmit the records in 161 and 284. The district court dismissed Burk-

ett's claim concerning only 161 on December 10, 1986 in W.D. Pa.Civ. No. 86–313, and we were forced to dismiss Burkett's interlocutory appeal for lack of jurisdiction on February 25, 1987 in 3d Cir. No. 86–3785.

tence him in 140/41. The court denied the writ on June 2, 1987. The record does not reveal if Burkett has appealed the denial.

## II. APPELLATE JURISDICTION IN NO. 86–3121: EXTENDING TIME FOR APPEAL UNDER RULE 60(b)

Because Burkett filed no appeal as such from the October 15, 1985 final order denying the writ in No. 86–3121, we raise *sua sponte* the issue of our jurisdiction over that case.[20] Burkett did file motions denominated as motions for reconsideration on January 15 and 21, 1986. The district court treated these as a motion for relief from its October 15 order, *see* Fed.R.Civ.P. 60(b), granted the motion, and redenied the habeas corpus petition on January 17 and 23. Burkett then filed a notice of appeal on February 5, 1986. If the district court had the power to construe the motions as it did in order to allow Burkett to file a timely notice of appeal, we have jurisdiction under 28 U.S.C. § 1291 to review the reentered final order.[21] If the district court's construction was in error, however, we lack jurisdiction: Burkett's motions could only be construed as either untimely motions for reconsideration under Federal Rule of Civil Procedure 59(e), whose filing deadline in this case would have been October 29, 1985; untimely notices of appeal under Federal Rule of Appellate Procedure 4(a)(1), with a filing deadline of November 14, 1985; or untimely motions to extend time to appeal under Federal Rule of Appellate Procedure 4(a)(5), due December 16, 1985.

We begin our analysis with the case of *West v. Keve*, 721 F.2d 91 (3d Cir.1983). In *West*, we confronted an appellant who had filed a Rule 60(b) motion whose "sole stated purpose ... [was] to extend the time for appeal." *Id.* at 96. Carefully limiting our decision to those specific facts, we held that a district court could entertain such a motion only if the motion and subsequent notice of appeal met the time constraints of Rule 4(a)(5). *Id.* at 97.[22]

In *Hall v. Community Mental Health Center of Beaver County*, 772 F.2d 42 (3d Cir.1985), we applied *West* to bar relief through a Rule 60(b) motion to a party whose counsel had not been notified by the court of the entry of a final order. We reached this result, even though counsel for neither side had been notified, *id.* at 46, on the basis of Federal Rule of Civil Procedure 77(d), which states that "[l]ack of notice of the entry by the clerk does not affect the time to appeal or relieve or authorize the court to relieve a party for failure to appeal within the time allowed, except as permitted in Rule 4(a)." *Id.* at 43. Noting counsel's lack of diligence, however, we expressly declined to decide whether relief might be permitted under Rule 60(b) "when delay in filing an appeal is based on reliance on some affirmative behavior of the district court." *Id.* at 45.[23]

---

**20.** "[T]he requirement of a timely notice of appeal is 'mandatory and jurisdictional.'" *Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56, 61, 103 S.Ct. 400, 403, 74 L.Ed.2d 225 (1982) (citation omitted).

**21.** Respondents have not raised the question whether the district court abused its discretion in reentering its final order, so we need not address that issue. *See Felshina v. Schweiker*, 707 F.2d 71, 72 (2d Cir.1983).

**22.** Regardless of our holding in *West*, at least six Courts of Appeals have allowed relief under Rule 60(b) outside the time constraints under Rule 4(a)(5). *See, e.g., Harnish v. Manatee County, Fla.*, 783 F.2d 1535, 1537–38 (11th Cir. 1986); *Wallace v. McManus*, 776 F.2d 915, 917 (10th Cir.1985) (*pro se* litigant); *Rodgers v. Watt*, 722 F.2d 456, 459–60 (9th Cir.1983) (en banc); *Felshina*, 707 F.2d at 72; *Buckeye Cellulose Corp. v. Braggs Elec. Const. Co.*, 569 F.2d

1036, 1037–38 (8th Cir.1978); *Fidelity & Dep. Co. of Md. v. USAFORM Hail Pool, Inc.*, 523 F.2d 744, 747–51 (5th Cir.1975), *cert. denied*, 425 U.S. 950, 96 S.Ct. 1725, 48 L.Ed.2d 194 (1976); *see also Sames v. Gable*, 732 F.2d 49, 51 n. 2 (3d Cir.1984) (distinguishing *West* on basis of "special circumstance").

**23.** While not holding so explicitly, at least four Courts of Appeals in addition to this court in *Hall* have at least assumed *arguendo* that such relief might be granted. *See, e.g., Spika v. Village of Lombard, Ill.*, 763 F.2d 282, 285 (7th Cir.1985), *cert. denied*, 474 U.S. 1056, 106 S.Ct. 793, 88 L.Ed.2d 771 (1986); *Case v. BASF Wyandotte*, 737 F.2d 1034, 1035 (Fed.Cir.) (*pro se* litigant), *cert. denied*, 469 U.S. 982, 105 S.Ct. 386, 83 L.Ed.2d 321 (1984); *Hensley v. Chesapeake & O. Ry. Co.*, 651 F.2d 226, 227 (4th Cir.1981); *Scola v. Boat Frances R., Inc.*, 618 F.2d 147, 152 (1st Cir.1980). *See also James v.*

The instant case is distinguishable from both *West* and *West*'s application in *Hall*. The purpose of Burkett's motion was different from that under consideration in *West*. Because Burkett's motion for reconsideration was motivated not only by his need for more time in which to appeal, but also by the court's failure to consider his 140/141 convictions and the continuing delay in his 161 appeal, the motion's "sole stated purpose" was not "to extend the time for appeal." *West*, 721 F.2d at 96. We similarly believe that the facts of this case are significantly different from those in *Hall*, which dealt with the actions of an attorney who was not diligent. Burkett was not only acting *pro se* but was incarcerated, physically restrained by respondents from checking in person on the status of his case. *Cf. Fallen v. United States*, 378 U.S. 139, 142–143, 84 S.Ct. 1689, 1691–1692, 12 L.Ed.2d 760 (1964) (court must accept notice of appeal filed late by prisoner because prison prevented its timely filing). He was exceptionally diligent in notifying the court of three address changes and responding to court orders, and the clerk had sent the magistrate's order to the correct address by certified mail. Most importantly, the clerk wrote Burkett four times in October and November 1985—thus both before and after the entry of final judgment in No. 86–3121—and assured him that he would be "advised of any decision." Only the critical final order was sent to the wrong address. The current situation therefore parallels those from which *Hall* explicitly distinguished itself: "In these and other cases, the 60(b) motions were allowed because counsel's duty of diligence was suspended in reliance on some affirmative action of the district court." 772 F.2d at 45 (citing cases).[24]

■ We reaffirm *West* and *Hall* and do not extend ourselves to distinguish them, but this case presents exceptional circumstances that justify relief under Rule 60(b) outside the time constraints of Rule 4(a)(5). We emphasize that Burkett was a diligent,[25] incarcerated habeas petitioner,[26] repeatedly transferred from jail to jail; that affirmative behavior of the court induced him to await notification by the court for a reasonable length of time;[27] that he learned of the entry of judgment too late to apply for relief under Rule 4(a)(5); that he promptly sought relief under Rule 60(b) within 30 days of learning of the entry of judgment; and that respondents have shown no prejudice.[28]

For the foregoing reasons the district court had the power under Rule 60(b)[29] to vacate and reenter judgment. Because Burkett then filed a notice of appeal within 30 days of reentry, we have jurisdiction to

*United States*, 459 U.S. 1044, 1046, 103 S.Ct. 465, 466, 74 L.Ed.2d 615 (1982) (opinion of Brennan, J., respecting denial of certiorari).

**24.** Indeed, Burkett's reliance appears to have been reasonable because No. 86–3074, his other federal habeas petition, was docketed simultaneously and was in fact still pending without final resolution.

**25.** In addition to Burkett's prompt notification of all address changes, we note that he wrote the court on December 16, 1985—the day the Rule 4(a)(5) limit expired—to inquire whether an order had been entered.

**26.** We note too that an order in a habeas corpus case is never strictly *res judicata*. A successive petition alleging the identical grounds may be entertained unless "the judge of court is satisfied that the ends of justice will not be served by such inquiry." 28 U.S.C. § 2244(a); *see Sanders v. United States*, 373 U.S. 1, 15, 83 S.Ct. 1068,

1077, 10 L.Ed.2d 148 (1963). Barring Rule 60(b) relief here would thus serve only delay, not finality.

**27.** Burkett's December 16 letter was written only 34 days after the court had last assured him that he would be notified of any decision.

**28.** *Cf. United States v. Hashagen*, 816 F.2d 899 (3d Cir.1987) (in banc) (allowing premature criminal appeal in absence of prejudice); *Richerson v. Jones*, 551 F.2d 918, 922 (3d Cir.1977) (allowing premature civil appeal in absence of prejudice).

**29.** We need not, and do not, decide whether this relief should come under the rubric of Rule 60(b)(2) (where due diligence did not lead to timely discovery of the order); 60(b)(5) (where "it is no longer equitable that the judgment should have prospective application"); or 60(b)(6) ("any other reason justifying relief"). *See Sames*, 732 F.2d at 51 n. 2.

review the merits of the order under 28 U.S.C. § 1291.

## III. EXHAUSTION OF STATE REMEDIES

A state prisoner seeking federal habeas relief must first exhaust "the remedies available in the courts of the State" unless "there is either an absence of available State corrective process or the existence of circumstances rendering such process ineffective to protect the rights of the prisoner." 28 U.S.C. § 2254(b). As we have noted previously, however, "[i]t is the legal issues that are to be exhausted, not the petitioner." *U.S. ex rel. Geisler v. Walters,* 510 F.2d 887, 893 (3d Cir.1975) (quoting *Park v. Thompson,* 356 F.Supp. 783, 788 (D.Haw.1973)). To that end, "inexcusable or inordinate delay by the state in processing claims for relief may render the state remedy ... ineffective to protect the rights of the prisoner," excusing a lack of exhaustion. *Wojtczak v. Fulcomer,* 800 F.2d 353, 354 (3d Cir.1986).

■ In general, the burden rests on a habeas petitioner to prove all facts warranting relief, *Brown v. Cuyler,* 669 F.2d 155, 158 (3d Cir.1982), including the facts relevant to the exhaustion requirement, *Gonce v. Redman,* 780 F.2d 333, 336 (3d Cir.1985). However, where a petitioner has demonstrated inordinate delay, we have placed the burden on respondents to demonstrate why further resort to the state courts should be required. *See Wojtczak,* 800 F.2d at 355–56; *Codispoti v. Howard,* 589 F.2d 135, 142 (3d Cir.1978).

■ The district court that entertained Burkett's earlier habeas petition found that the delay as of May 1985 was already sufficient to excuse exhaustion. That quite correct finding was part of an order which was not appealed by the state, and we did not grant Burkett's probable cause petition; the district court's ruling is therefore

not open to collateral attack in this proceeding. Hence, Burkett's claims would only have become unexhausted if state proceedings have progressed to a sufficient degree.

■ As to No. 86–3074, Burkett's direct appeal in 284 now appears to be proceeding normally.[30] Blair County has thus complied with the previous court order as to 284. Burkett has alleged that Blair County had further delayed his appeal by transmitting the record four months late, and he alleges a further three-month delay since the district court's decision. However, it is not disputed that the case is now before the Pennsylvania Supreme Court. Under the circumstances, we believe that it is appropriate to allow that court, in the first instance, to hear petitioner's claims. We will therefore affirm the district court's dismissal for lack of exhaustion in No. 86–3074.

■ In No. 86–3121, there has been insufficient change for us to find that Burkett's claims have since become unexhausted. There is no indication that the Pennsylvania appellate courts will soon receive 140/141 or that they will soon dispose of 161, even if we were again inclined to give the state yet more time. Because of the continued delay, we find that Burkett has exhausted his state remedies in this proceeding.[31]

■ We repeat that "justice delayed is justice denied." *Geisler,* 510 F.2d at 893. We fully appreciate the requirements of comity, but further deference to the state courts in No. 86–3121 would constitute a comity of errors, making a mockery of fundamental rights that are guaranteed to the guilty and innocent alike. Hence we hold that the egregious ongoing delay in 140/141 and 161 itself, amounting to five and one-half years, as a matter of law excuses exhaustion of state remedies concerning all federal claims raised by Burkett

---

**30.** The magistrate's finding in this respect was premature. *See supra* at 1214–15 & n. 17.

**31.** Even if Burkett's appeal can now proceed in 161, we believe Burkett has waited long enough for the state court system to act and may properly seek relief in federal court. *See Wojtczak,* 800 F.2d at 356 n. 3 (finding that delay of three and one-half years in ruling on PCHA petition excused exhaustion even where cause of delay may now have been removed).

in 86–3121. *See Wojtczak,* 800 F.2d at 354. Because the district court erred as a matter of law in finding that Burkett failed to exhaust, its order on that issue must be reversed.[32]

## IV. CONSTITUTIONAL PROTECTIONS AGAINST DELAY: SPEEDY TRIAL AND DUE PROCESS CONCERNS

Having found both that we have jurisdiction over No. 86–3121 because a timely notice of appeal has been filed and that state remedies have been sufficiently exhausted, we now consider the merits of the legal issues presented in that habeas corpus petition.[33] Burkett's petition arises at the intersection of two lines of cases. In one line, the Sixth Amendment guarantees the right to a speedy trial, which applies to the states by the Fourteenth Amendment. *See Klopfer v. North Carolina,* 386 U.S. 213, 87 S.Ct. 988, 18 L.Ed.2d 1 (1967). In the second line, the Due Process clause of the Fourteenth Amendment has guaranteed to state criminal defendants procedural safeguards not only at the trial level, but also for appeals as of right. *See Evitts v. Lucey,* 469 U.S. 387, 105 S.Ct. 830, 83 L.Ed.2d 821 (1985); *Griffin v. Illinois,* 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891 (1956). We first review the applicable law in both lines to determine if either or both apply and, if so, what relief they may provide. As is explained more fully below, we find both lines applicable. We will therefore apply their analysis to Burkett's petitions to the extent that the record reveals no material issues of fact.

### A. *The Right to Speedy Trial*

■ The Sixth Amendment right to a speedy trial is a fundamental tenet of An-

glo-American jurisprudence. The liberties now embodied therein were first articulated in the very foundation of our English law heritage. *See* Magna Carta, c. 29 [c. 40 of King John's Charter of 1215; c. 29 of King Edward's Charter of 1297] (1225) ("To none will we sell, to none will we deny or delay, right or justice"). The Speedy Trial clause is applicable to state trials as part of the due process required by the Fourteenth Amendment. *Klopfer,* 386 U.S. at 226, 87 S.Ct. at 995.

In determining whether the right has been violated, a court should weigh four factors: "Length of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant." *Barker v. Wingo,* 407 U.S. 514, 530, 92 S.Ct. 2182, 2192, 33 L.Ed.2d 101 (1972); *Sandler v. Sullivan,* 748 F.2d 820 (3d Cir. 1984). Because "the right to a speedy trial is a more vague concept than other procedural rights," *Barker,* 407 U.S. at 521, 92 S.Ct. at 2187, courts are compelled to "approach speedy trial cases on an *ad hoc* basis," *id.* at 530, 92 S.Ct. at 2192. Whether a particular individual's rights have been violated "depends upon the circumstances," *Pollard,* 352 U.S. at 361, 77 S.Ct. at 486, and therefore upon "a functional analysis of the right in the particular context of the case." *Barker,* 407 U.S. at 522, 92 S.Ct. at 2188. Hence the *Barker* analysis presents four factors that "are guidelines, not rigid tests," *Perez v. Sullivan,* 793 F.2d 249, 254 (10th Cir.), cert. denied, —— U.S. ——, 107 S.Ct. 413, 93 L.Ed.2d 364 (1986), and no single factor is "either a necessary or sufficient condition of the deprivation of a right to a speedy trial." *Barker,* 407 U.S. at 533, 92 S.Ct. at 2193.

We regard as frivolous Blair County's assertion that Burkett's recent filing of a new state habeas petition in its court constitutes his implicit admission "that he has not exhausted his state remedies nor are attempts futile, and as a consequence, the Federal action is moot." Brief for Appellees at 8.

---

**32.** We note also that even were we to find the claims concerning 161 unexhausted, relief would not be barred on the 140/141 claims, since they arise from a wholly separate conviction. The "total exhaustion" rule of *Rose v. Lundy,* 455 U.S. 509, 522, 102 S.Ct. 1198, 1205, 71 L.Ed.2d 379 (1982), applies only to claims arising from a single criminal case. Nor is exhaustion required in any event when a petitioner in essence seeks review of a state's failure to comply with a federal court's mandate. *Tully v. Scheu,* 637 F.2d 917, 921 (3d Cir.1980). We hold that this is the case here.

**33.** In view of the age of the cases encompassed by No. 86–3121, we feel obliged to at least consider the merits of the legal issues rather than automatically remand to the district court for that purpose. *See infra* at 1226.

■ If this analysis leads to a conclusion that the right to a speedy trial has been violated, the prejudice of the violation must be rectified. *See, e.g., Braden v. 30th Judicial Circuit Court of Kentucky,* 410 U.S. 484, 486, 93 S.Ct. 1123, 1125, 35 L.Ed.2d 443 (1973). Where the prejudice cannot be rectified, the remedy must be discharge from custody with prejudice to retrial. *See Strunk v. United States,* 412 U.S. 434, 440, 93 S.Ct. 2260, 2263–64, 37 L.Ed.2d 56 (1973).

Although neither the Supreme Court nor this Court has definitively held that the right to speedy trial applies to post-verdict proceedings, both have assumed *arguendo* that the right extends at least to sentencing. *See, e.g., Pollard v. United States,* 352 U.S. 354, 361, 77 S.Ct. 481, 485–86, 1 L.Ed.2d 393 (1957); *United States v. Campisi,* 583 F.2d 692, 694 (3d Cir.1978); *see also Schandelmeier v. Cunningham,* 819 F.2d 52, 55 (3d Cir.1986) (dismissing without prejudice, for want of exhaustion, a speedy trial claim in post-verdict context). Other courts—including the district court in Burkett's earlier habeas action, *see* Supp. App. 7—have squarely held that the Speedy Trial clause applies to the sentencing phase of prosecution. *Tinghitella v. State of California,* 718 F.2d 308, 312–13 (9th Cir.1983); *United States v. Merrival,* 600 F.2d 717, 720 (8th Cir.1979); *United States v. Howard,* 577 F.2d 269, 270 (5th Cir.1978); *United States v. Reese,* 568 F.2d 1246, 1253 (6th Cir.1977); *United States v. Campbell,* 531 F.2d 1333, 1335 (5th Cir. 1976), *cert. denied,* 434 U.S. 851, 98 S.Ct. 164, 54 L.Ed.2d 121 (1977); *Juarez-Casares v. United States,* 496 F.2d 190, 192 (5th Cir.1974) (prisoner discharged for 31–month delay); *Hooper v. Cunningham,* Civ. No. 84–2818, slip. op. at 4, 9 (W.D.Pa. Feb. 21, 1985) [Available on WESTLAW, DCT database] (Blair County prisoner unsentenced for 37 months after trial must be discharged from custody), *motion to withdraw appeal granted,* No. 85–3161 (3d Cir. Sept. 18, 1985).[34] Indeed, the Tenth Circuit

noted in *Perez* that, since the Supreme Court's decision in *Pollard,* it "and all others which have addressed the issue have either treated the subject as established law or have perpetuated the Court's assumption in *Pollard.*" 793 F.2d at 253 (citing cases).

■ We now make explicit what we have assumed in our previous cases, that the Speedy Trial clause of the Sixth Amendment applies from the time an accused is arrested or criminally charged, *United States v. Marion,* 404 U.S. 307, 320, 92 S.Ct. 455, 463, 30 L.Ed.2d 468 (1971), up through the sentencing phase of prosecution, *see Campisi,* 583 F.2d at 694 —in other words, until one final, pre-appellate determination has been made as to whether and for how long the accused should be incarcerated.

■ In *Campisi,* without deciding this last proposition, we applied the four-part *Barker* test to speedy trial claims concerning delays in sentencing. *Campisi,* 583 F.2d at 694. Other courts have done the same. *See, e.g., Campbell,* 531 F.2d at 1335; *Pounds,* 417 A.2d at 599–601; *see also Perez,* 793 F.2d at 254 (deciding definitively that the Speedy Trial clause applies to post-verdict proceedings); *Reese,* 568 F.2d at 1253 (same). We hold that the proper test to determine a Speedy Trial clause violation in a post-verdict context is the four-factor test of *Barker v. Wingo,* 407 U.S. at 530, 92 S.Ct. at 2192. Moreover, we agree with the prevailing caselaw that none of the *Barker* factors is either necessary or sufficient. Nevertheless, while "all four factors are to be balanced in light of the facts and circumstances of the case," *Perez,* 793 F.2d at 254 (citations omitted), "once a defendant has been convicted it would be the rarest of circumstances in which the right to a speedy trial could be infringed without a showing of prejudice." *Id.* at 256. Additionally, we agree that *Strunk* is also applicable in the sentencing context and, if a violation is

---

**34.** *See also United States v. Tortorello,* 391 F.2d 587, 589 (2d Cir.1968) (assuming *arguendo* that Speedy Trial Clause applies to sentencing); *Brady v. Superintendent, Anne Arundel Co. Det. Ctr.,*

443 F.2d 1307, 1310 (4th Cir.1971) (same); *Commonwealth v. Pounds,* 490 Pa. 621, 417 A.2d 597, 599 (1980) (same).

found, the remedy must be discharge with prejudice to retrial if no lesser remedy can rectify the prejudice to the defendant. 412 U.S. at 440, 93 S.Ct. at 2263–64.

### B. *Due Process*

The Supreme Court has found that the Due Process clause protects the right to direct appeal when that right is guaranteed by the state, even though the Constitution does not require states to grant that right. *See, e.g., Evitts,* 469 U.S. at 393, 105 S.Ct. at 834. Due process requires that a right to appeal be a right to an " 'adequate and effective' appeal" which is "more than a 'meaningless ritual.' " *Id.* at 393, 394, 105 S.Ct. at 834 (quoting *Griffin v. Illinois,* 351 U.S. 12, 18, 76 S.Ct. 585, 590, 100 L.Ed. 891 (1956), and *Douglas v. California,* 372 U.S. 353, 358, 83 S.Ct. 814, 817, 9 L.Ed.2d 811 (1963)). Due process further protects not only the right "to obtain a *favorable* decision," but also the right "to obtain a decision at all ... on the merits of the case." *Evitts,* 469 U.S. at 395 n. 6, 105 S.Ct. at 835 n. 6 (emphasis in original). In short a convicted defendant has a right to know what the sentence is to be, and to proceed with a direct appeal.

The Court has been clear in its reasons for extending the meaningful procedural protections of due process to appeals as of right. By deciding that an appeal is so important that it must be available as a matter of right, a state has "made the appeal the final step in the adjudication of guilt or innocence of the individual." *Id.* at 404, 105 S.Ct. at 840 (citing *Griffin,* 351 U.S. at 18, 76 S.Ct. at 590). The state itself recognizes that an appeal as of right plays such a crucial role that "the State could not ... decide[ ] the appeal ... arbitrar[il]y" or otherwise deny an appellant "fair procedure." *Evitts,* 469 U.S. at 404, 105 S.Ct. at 840.

■ We have held that inordinate and unexcused delays in post-trial or post-conviction proceedings may violate a convict's "constitutional rights." *Codispoti,* 589 F.2d at 142. Several other courts of appeals have identified the source of these rights as the Due Process clause. *See, e.g.,*

*Lowe v. Letsinger,* 772 F.2d 308, 312 (7th Cir.1985); *DeLancy v. Caldwell,* 741 F.2d 1246, 1247–48 (10th Cir.1984); *United States v. Pratt,* 645 F.2d 89, 91 (1st Cir.), *cert. denied,* 454 U.S. 881, 102 S.Ct. 369, 70 L.Ed.2d 195 (1981); *Rheuark v. Shaw,* 628 F.2d 297, 302–04 (5th Cir.1980), *cert. denied,* 450 U.S. 931, 101 S.Ct. 1392, 67 L.Ed.2d 365 (1981); *McLallen v. Henderson,* 492 F.2d 1298, 1299–1300 (8th Cir.1974); *Rivera v. Concepcion,* 469 F.2d 17, 19 (1st Cir.1972); *Way v. Crouse,* 421 F.2d 145, 146–47 (10th Cir.1970); *see also' U.S. ex rel. Hankins v. Wicker,* 582 F.Supp. 180, 185 (W.D.Pa.1984), *aff'd mem.,* 782 F.2d 1028 (3d Cir.), *cert. denied,* —— U.S. ——, 107 S.Ct. 118, 93 L.Ed.2d 64 (1986); *Mitchell v. Zimmerman,* 582 F.Supp. 186, 187–88 (E.D.Pa.1984). Delays such as those attendant to Burkett's convictions may therefore violate the strictures of due process.

■ The Due Process clause thus protects not only against delays in trial, including sentencing; it also guarantees a reasonably speedy appeal if the state has chosen to give defendants the right to "attempt[ ] to demonstrate that the conviction, and the consequent drastic loss of liberty, is unlawful." *Evitts,* 469 U.S. at 396, 105 S.Ct. at 836. Where post-verdict delays not only impede sentencing but also the appeal as of right, the clause is doubly implicated. "Due process can be denied by any substantial retardation of the appellate process." *Rheuark,* 628 F.2d at 302 (citing cases); *see also DeLancy,* 741 F.2d at 1247 (same).

"[P]roof of prejudice is generally a necessary but not sufficient element of a due process claim." *United States v. Lovasco,* 431 U.S. 783, 790, 97 S.Ct. 2044, 2048–49, 52 L.Ed.2d 752 (1977). Moreover, state actions must be "fundamentally unfair," not merely undesirable, in order to violate due process. *See, e.g., Donnelly v. DeChristoforo,* 416 U.S. 637, 645, 94 S.Ct. 1868, 1872, 40 L.Ed.2d 431 (1974). "However, ... not every delay in the appeal of a case, even an inordinate one, violates due process." *Rheuark,* 628 F.2d at 303. The existence of a

due process violation must thus be left to an *ad hoc* determination.

■. Because both the Due Process and Speedy Trial clauses constrain post-verdict delay, the Fifth Circuit and the Tenth Circuit have looked to the four *Barker* factors as a means of determining whether due process has been violated. *See DeLancy*, 741 F.2d at 1247–48 (reviewing delays occasioned in securing appeal); *Rheuark*, 628 F.2d at 302–04 (same). Because of both the delay in sentencing and the gatekeeping role played by sentencing in connection with Pennsylvania appeals, we too face the same situation in Burkett's cases. We agree that, as a general matter, the *Barker* factors should also inform our due process determination, for "the right to avoid unreasonable delay in the appellate process is similar to the right to a speedy trial." *DeLancy*, 741 F.2d at 1247.

However, the *Barker* prejudice factor does not run fully concurrently when examining delays in sentencing and delays in initiating appellate review. *Compare Smith v. Hooey*, 393 U.S. 374, 378–80, 89 S.Ct. 575, 577–78, 21 L.Ed.2d 607 (1969), *with Rheuark*, 628 F.2d at 303 n. 8. In adapting the prejudice prong of the *Barker* analysis to appellate delays, courts have identified three interests in promoting prompt appeals:

(1) prevention of oppressive incarceration pending appeal; (2) minimization of anxiety and concern of those convicted awaiting the outcome of their appeals; and (3) limitation of the possibility that a convicted person's grounds for appeal, and his or her defenses in case of reversal and retrial, might be impaired.

*Rheuark*, 628 F.2d at 303 n. 8.

■ The normal remedy for a due process violation is not discharge; rather, a court faced with a violation should attempt to counteract any resulting prejudice demonstrated by a petitioner. However, discharge is warranted where attempting an alternate remedy would not vitiate the prejudice of the fundamental unfairness or would itself violate a petitioner's constitutional rights. *See, e.g., Codispoti*, 589 F.2d at 142 (district court must decide "whether a new trial should be held or whether due to the passage of time the charges must be dismissed"); *Rheuark*, 628 F.2d at 303 n. 8 (if retrial is ordered after substantial delay on appeal, *Barker* applies directly in determining whether the Speedy Trial clause should bar such retrial).

In exceptionally egregious circumstances, a delay itself may "violate[ ] those 'fundamental conceptions of justice which lie at the base of our civil and political institutions' ... and which define 'the community's sense of fair play and decency.'" *Lovasco*, 431 U.S. at 790, 97 S.Ct. at 2049 (citations omitted). Once the time that constitutes the delay has elapsed no remedy can call it back. Where delay is so extreme as to assume constitutional proportions, discharge thus becomes less of an unlikely remedy.

■ Moreover, discharge is a generally available remedy where lesser remedies prove ineffective in curbing a continuing due process violation. Where a court order has denied discharge on the condition that a lesser remedy be granted, but that order has gone unfulfilled, discharge is indeed appropriate. *See, e.g., Lane v. Brown*, 372 U.S. 477, 485, 83 S.Ct. 768, 773, 9 L.Ed.2d 892 (1963); *Brady*, 443 F.2d at 1309.

## V. THE MERITS

We have found that due process and speedy trial claims may lie to rectify egregious delay in sentencing and initiation of appeal. We will therefore examine, in light of the applicable legal principles just discussed, the two state convictions that are encompassed by No. 86–3121, the habeas corpus petition in which Burkett has exhausted his state remedies.

### A. *Nos. 140 and 141 of 1981*

Burkett has now been incarcerated for well over six years on 140/141 without a sentence. We analyze Burkett's habeas appeal in light of this delay in sentencing and the resulting delay in Burkett's ability to appeal, as well as the disregard with which the Blair County court has met the previous federal court order denying fur-

ther relief on the condition that Burkett be sentenced within 60 days—an order that is now more than two years old.

### 1. *Speedy Trial Violation*

■ Under the law of the case, Burkett has established a speedy trial violation. The district court found on May 30, 1985 that his right to speedy trial would be violated unless Blair County resolved all post-verdict motions and sentenced Burkett within 60 days in all of his cases. The county did not challenge the magistrate's report and recommendation before either the magistrate or the district court, did not attempt to appeal the district court's order, sought no extension of time for complying with the order, has not complied with respect to 140/141, and even now offers no excuse for non-compliance.[35]

As we have noted above, *see supra* at 1213, both the magistrate and the district court found that all *Barker* factors weighed to some extent in Burkett's favor, including a finding that the delay alone had caused Burkett prejudice.[36] The findings of the magistrate, including that of a speedy trial violation, were adopted and incorporated by the district court; the district court's accompanying order is not now subject to collateral attack. Even if it were, we think that the order was well within the district court's discretion.

The length of delay has grown from three and one-half to five and one-half years. The reason for the additional delay—crowded court calendars and the court reporter's delay in filing transcripts—must be weighed against the government rather than Burkett. *See Barker*, 407 U.S. at 514, 92 S.Ct. at 2184. Burkett has continuously asserted his right during this time. Finally, the prejudice to Burkett found by the district court on May 30, 1985 can only have been compounded by the additional two years of delay—he may have lost at least in part the opportunity for concurrent

35. The partial dissent suggests that Blair County could not have appealed the order. Post at 1230 n. 5. However, we believe that Blair County had standing to appeal. First, it did not, in contrast to the appellant in *Perez v. Ledesma,* 401 U.S. 82, 87 n. 3, 91 S.Ct. 674, 678 n. 3, 27 L.Ed.2d 701 (1971), fully prevail as to all appealable aspects of the order. The order dismissed Burkett's petition only conditionally—"unless ... Blair County fails to ... impose any appropriate sentence within sixty (60) days"—and ordered Blair County "to act in accordance with this directive." Second, the district court would have had no constitutional authority to enter such an order had no violation been at least impending. On the other hand, a court must grant appropriate relief where an existing violation is found. Indeed, having found a violation, there was nothing left to be decided in a new petition other than the remedy. Unfortunately, however, the district court, instead of retaining jurisdiction, marked the case "closed." (Obviously the district court did not conceive that the county, once warned, would not sentence Burkett within 60 days). Under these circumstances, we read the less-than-pellucid order, together with the court's opinion, as a conditional grant of Burkett's writ. The "new petition" contemplated by the order must thus have been a petition for enforcement by appropriate remedy, with the fact of violation established if Blair County neither complied nor successfully petitioned for an extension.

As for finality, it may be argued that this Court has already determined that the order was final and appealable by denying without prejudice a certificate of probable cause in Burkett's appeal instead of dismissing for want of appellate jurisdiction. App. 155.

36. The magistrate stated:

As the Court recognized in *Smith v. Hooey,* 393 U.S. 374, 378 [89 S.Ct. 575, 577, 21 L.Ed.2d 607] (1969), where delay occurs, an individual may lose certain advantages such as receiving concurrent sentences and may even receive an enhanced sentence.

While the extent of prejudice cannot be measured with exactitude, it would appear reasonable to conclude that the delay by the Blair County courts has caused some loss to the petitioner.

Supp. App. at 10–11.

Because the district court found prejudice in the earlier proceedings, this case does not present the question of when, if ever, a court could find a post-verdict speedy trial violation without first finding prejudice. We therefore find that Judge Garth's requirement, with which we do not take issue, that delay alone is insufficient and that a defendant bears the burden of establishing prejudice, *see* post at 1232, has thus been satisfied. We recognize, with Judge Garth, the significance of conviction in assessing prejudice, and cannot disagree with his conclusion that, post-conviction, there is less fear that an individual is being improperly subjected to incarceration. Post at 1231. However, we stress that the sentencing court or an appellate court may ultimately determine that no incarceration is proper.

**1224**

sentencing,[37] and we would expect any person to suffer some degree of anxiety and concern after not being sentenced after six years of incarceration. This is particularly so where a federal court order designed to remedy the problem has still had no effect after two years.

Even had there been no prior determination concerning Burkett's pre-sentence delay, we are aware of no case where relief under the Sixth Amendment was denied where the pre-sentence delay was as egregious as here. The facts of cases denying relief have all involved significantly less extensive delays. *Campisi*, 583 F.2d at 694–95, *Reese*, 568 F.2d at 1252–53, *Merrival*, 600 F.2d at 720, and *Perez*, 793 F.2d at 252–57, all found delays ranging only from five to 15 months, most of which time (for example, all but 17 days in *Merrival*) was excusable. *Pollard* involved a timely but accidentally invalid sentence promptly corrected upon discovery of its invalidity after almost 24 months, *see* 352 U.S. at 356–57, 361–62, 77 S.Ct. at 483, 485–86; four justices would nonetheless have granted relief even though the petitioner had not requested proper sentencing, *id.* at 368, 77 S.Ct. at 489 (Warren, C.J., dissenting). *Pounds* also involved a 24–month delay, about half of which was unexcused, but the appellant neither asserted his right to be sentenced nor showed prejudice. *See* 417 A.2d at 599–601. *Tortorello* involved a largely excused 30–month delay. *See* 391 F.2d at 588–89. *Howard* involved a resentencing three years after a timely sentence had initially been suspended and the petitioner placed on probation; the court refused to prohibit resentencing pursuant to federal statute because the petitioner had not sought to be sentenced until after revocation of probation was threatened. *See* 577 F.2d at 270–72. In *Tinghitella*, the petitioner fled the jurisdiction prior to a timely scheduled sentencing and refused to allow the state's constitutionally permissible (under the circumstances) offer of sentencing *in absentia*. *See* 718 F.2d at 310–13.

For more egregious delays, on the other hand, courts have found that relief was mandated. The petitioner was unconditionally released in *Juarez-Casares* because of an unexcused 31–month delay for which he had shown possible prejudice, even though he had not asserted his right to prompt sentencing. *See* 496 F.2d at 191–93. A six-year delay, during which the petitioner was at liberty for the 51 unexcused months, was condemned in *Campbell*, even though the petitioner had not asserted his right to sentencing; remand was ordered for findings as to prejudice even though his allegations appeared weak. *See* 531 F.2d at 1334–36.

Because of the procedural posture of this case, arising only after a prior court order, we take special note of *Brady*. In *Brady*, the petitioner's death sentence had been vacated, but the state did not resentence him for eight years. Brady himself preferred death to life (the only statutory alternative), but his counsel would not agree to a sentencing proceeding with only those two options, and the prosecution did not proceed without such agreement. The district court "denied relief" only on the condition that Brady be resentenced promptly to life in prison, with full credit for time served since his arrest. The state promptly complied, and the Fourth Circuit declined to order further relief under the circumstances of the case. *See* 443 F.2d at 1308–13.

 In this case we too have a prior order, but Blair County has not complied with its terms. Therefore, we find a speedy trial violation both from the law of the case and because all four *Barker* factors weigh in Burkett's favor. Blair County's noncompliance with the May 30, 1985 order of the district court removes any doubt as to whether the normal remedy of discharge, *see Strunk*, 412 U.S. at 440, 93 S.Ct. at 2263–64, should be replaced by a lesser remedy, *see Braden*, 410 U.S. at 486, 93 S.Ct. at 1125. At this late juncture

**37.** We note that the courts in 161 and 284 did not give concurrent credit for time already served.

no remedy short of discharge can vindicate Burkett's right to speedy trial.[38]

## 2. *Due Process Violation*

██ Although the delay in sentencing despite the order violates the Sixth Amendment speedy trial guarantee and by itself justifies discharge,[39] the delay in sentencing also prohibits Burkett from pursuing an appeal in this case. Burkett's due process rights are thus implicated. We therefore examine the *Barker* factors as they apply to delay in appellate review, and we find that this delay in sentencing has deprived Burkett of due process.

Burkett has shown monumental delay in this case. There being no excuse for the delay, two of the *Barker* factors inure immediately to his favor. Moreover, he asserted his right to speedy sentencing at least by March 1984, and the record reflects his efforts to obtain trial transcripts to prepare post-verdict motions in August 1982 and July 1983.

██ We also find that Burkett has been prejudiced by the monumental delay he has encountered in his attempts to secure his appeal as of right. "In bringing an appeal as of right from his conviction, a criminal defendant is attempting to demonstrate that the conviction, and the consequent drastic loss of liberty, is unlawful." *Evitts*, 469 U.S. at 396, 105 S.Ct. at 836. Due process guarantees a criminal appellant certain minimum safeguards to make that appeal adequate and effective. *See id.* at 393–94, 105 S.Ct. at 834–35; *Griffin*, 351 U.S. at 20, 76 S.Ct. at 591. In this case, it is not only that Burkett has been deprived his right to review "at a meaningful time." *Armstrong v. Manzo*, 380 U.S. 545, 552, 85 S.Ct. 1187, 1191, 14 L.Ed.2d 62 (1965). Rather, he has also been prejudiced because of "the possibility that a convicted person's grounds for appeal, and his or her defenses in case of reversal and retrial, might be impaired." *Rheuark*, 628 F.2d at 303 n. 8. Moreover, the possible anxiety and concern that speedy trial rights protect, and which may have arisen from the extreme delay in sentencing, could have been compounded by the delay in allowing an initiation of appeal. *See id.* Finally, we have noted that the district court in its Order of May 30, 1985, found that Burkett was prejudiced in this way by his delayed sentencing and that order is not subject to collateral attack. The prejudice is equal for the delay in appeal and is only exacerbated by the continued delay. In sum, the actions of the Blair County Court have not merely been undesirable, but so fundamentally unfair that they amount to a violation of the process which Burkett is due. Because of the unusual circumstances of this case discussed above, we find discharge the appropriate remedy for this due process violation.

## 3. *Disposition*

In 140/141, Burkett has now been incarcerated for more than six years without the

---

**38.** Judge Garth suggests that an appropriate remedy might be not discharge but "to order release after the prisoner had served his statutory minimum sentence." Post at 1233. We do not dispute that, as in *Brady*, such a remedy may on occasion be appropriate. However, in 140/141 Burkett has already served more than his statutory minimum, which would be no time at all. *See* 18 Pa.Cons.Stat.Ann. §§ 3502, 1103 (burglary punishable by 0 to 20 years); *id.* §§ 3921, 3925, 3902, 3903, 1103 (theft by unlawful taking and theft by receiving stolen property, merge; punishable by 0 to 7 years); *id.* § 3502(d) (theft charges merge with burglary for sentencing purposes); *id.* §§ 2706, 1104 (terroristic threats punishable by 0 to 5 years); *id.* §§ 6301, 1104 (corruption of minors punishable by 0 to 5 years). Moreover, on the record before us, it appears that Burkett has not been credited in 161 or 284 for his time in jail from April 13, 1982 to June 24, 1985; as for his time

in jail from February 7 to 13, 1981, he could not be credited in any case but 140/141. *See supra* at 1211–1212, 1213 & nn. 12–13.

**39.** Because we find that the speedy trial violation warrants discharge, we could decline to reach the merits of the separate due process claim. However, for the reasons explained in the text, there is an independent due process violation and we deem it appropriate, in view of the drastic remedy, to develop that ground as well. We note too that the Supreme Court has only assumed *arguendo*, rather than so holding formally, that the Speedy Trial clause applies to post-verdict proceedings. *See Pollard*, 352 U.S. at 361, 77 S.Ct. at 485–86. *But cf.* cases cited *supra* at 1220 (lower courts definitively applying Speedy Trial clause). Hence, stating an additional ground for our decision is prudent.

finality that sentencing imparts to a trial and without the guaranteed appellate determination of whether it is proper to imprison him at all on these charges.[40] He has shown prejudice to his right to a speedy trial and to fair procedure, and such egregious delays have violated fundamental conceptions of justice, fair play, and decency. Moreover, Blair County continues to violate a court order that would have permitted a lesser remedy than discharge. When pressed by this Court, the Assistant District Attorney representing Blair County conceded that the record was sufficient for this Court to order discharge as to 140/141. Tr. Or. Arg. 25.[41]

■■■ "Although the failure of the district court to apply the correct legal standard should normally result in a remand, we need not remand if 'the record permits only one resolution of the factual issue.'" *A.J. Canfield v. Honickman*, 808 F.2d 291, 307 (3d Cir.1986) (quoting *Pullman Standard v. Swint*, 456 U.S. 273, 291–92, 102 S.Ct. 1781, 1791–92, 72 L.Ed.2d 66 (1982)). The undisputed material facts in this case constitute a continuing violation of Burkett's speedy trial and due process rights. Under the unusual circumstances of this case, including the ongoing violation of the federal court order and Blair County's concession as to the appropriate remedy, it appears that no relief short of discharge could fully remedy these violations. We therefore order that the district court issue a writ of habeas corpus forthwith and discharge Burkett from his convictions in Nos. 140 and 141 of 1981.

### B. *No. 161 of 1981*

Burkett was arrested in 161 on February 13, 1981, convicted on January 20, 1982, and sentenced on July 10, 1985. He has been unable effectively to appeal this conviction and sentence, however, because of the trial court's delay in filing an opinion and the delay of the Blair County prothonotary in transmitting the record, which was due in Superior Court more than 21 months ago.[42]

The district court held in May 1985 that, if Burkett were promptly sentenced, no Speedy Trial Clause violation would have been established. We did not disturb that order in denying Burkett a certificate of probable cause, and he proffers no facts that would suggest that the *Barker* factors should now be weighed differently. Because Burkett was promptly sentenced, it is the law of the case that he is not entitled to relief under the Speedy Trial clause.[43]

However, Burkett has additionally met delay in the processing of his case for referral to the appellate court. This delay implicates his right to due process of law, and we must therefore analyze it under the four factors of *Barker*. Under the first factor, the factual record reveals that delay certainly exists: it has been almost two years since he was sentenced, yet, until a scant months ago, well after this case was argued to us, the trial court had not taken the first step to clear Burkett's way for appeal, and it is still not certain that his way has now been cleared.[44]

As for the second factor, the county has offered no excuse whatsoever for this con-

---

**40.** We note additionally that he was imprisoned for more than four years before any sentence was imposed on him, and even that sentence (in 284) has not yet been finally affirmed under the appellate process due Burkett under Pennsylvania law.

**41.** MS. COHEN: I have to be very honest with you, Your Honors. You put me in a very tough position.

I think perhaps on the record on 140 and 141, this Court can make a very adequate decision of what to do with that matter, and that decision might appropriately be to discharge and dismiss, after five and a half years.

**42.** *See supra* at 1213–14 & nn. 13–16; *see also supra* at 1215–16.

**43.** Judge Garth believes that the procedure in the district court in May 1985 was so defective that we cannot rely on its findings. Post at 1230 n. 3. If he were correct, we would also have to remand Burkett's speedy trial claim in 161 as well as 140/141. We, however, believe that the question of the propriety of the district court's procedure and order was one for direct appeal. *See supra* at 1223 n. 35.

**44.** *See supra* at 1213–14 & nn. 14–16; *see also supra* at 1215–16.

tinuing delay in completing the process, guaranteed under Pennsylvania law, of determining whether Burkett is properly incarcerated under his January 1982 conviction on these charges. As noted *supra* at 1212 & n. 7, 1213–1214 nn. 14–16, under Pennsylvania law the trial court could not transmit the record until the relevant opinion had been filed; even now, it is not clear that the record has been transmitted, and the appeal cannot proceed without the record. Because Burkett has diligently asserted his right to appeal, the third *Barker* factor also weighs heavily in his favor.

■ As for the fourth *Barker* factor, we find that the factual record is not sufficiently developed to allow us to make a determination concerning prejudice. Although the length of Burkett's post-verdict incarceration without being able to appeal approaches the length of the corresponding delay in 140/141, an undetermined portion of the resulting prejudice in 161 may have been mitigated or cured by Blair County's prompt sentencing of Burkett following the May 30, 1985 order of the district court. We will therefore remand for factual findings concerning the types of prejudice we have identified, *see supra* at 1222, and for a balancing of the *Barker* factors.[45] It is therefore the district court in the first instance that will determine if the delay in initiating appellate review has been so egregious as to deny Burkett his due process guarantees.

It appears that Burkett raised only the issue of delay in his habeas petitions because he believed he could raise no other issues until the delay was remedied. Because delay has excused any non-exhaustion of any issues which Burkett has to this point attempted to raise in the state courts, however, we will direct the trial court to allow him on remand to plead and join other such federal claims if he so desires. The district court should appoint counsel.[46]

## VI. CONCLUSION

It is not within our province to judge the stewardship of the Blair County Court of Common Pleas in disposing of its criminal docket. Judge Brumbaugh in his very recent opinion denying Burkett relief in 161 has recounted in some detail the judicial manpower shortage afflicting that county from 1979 to 1982).[47] The States Supreme Court has made clear, however, that "negligence or overcrowded courts should be weighted ... [against the government] since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant." *Barker*, 407 U.S. at 531, 92 S.Ct. at 2192. Including Burkett's previous habeas action, federal courts have before today called attention to unconstitutional delays in processing criminal cases in Blair County on at least three occasions: *Hooper v. Cunningham*, Civ. No. 84–2818 (W.D.Pa. Feb. 21, 1985) [Available on WESTLAW, DCT database]; *Burkett v. Cunningham*, Civ. No. 85–769 (W.D.Pa. May 30, 1985); *Schandelmeier v. Cunningham*, 819 F.2d 52 (3d Cir.1986).[48] This case is the most egregious

---

**45.** We are confident that Blair County will now quickly remove the remaining impediments to Burkett's appeal—the remand in no way affects the ability of the Blair County Court of Common Pleas to expedite the transmission of the record to Superior Court and otherwise exercise its power to advance Burkett's appeal. *See supra* at 1214 & nn. 15–16 and 1216. Such prompt action may well put an end to any possibility of the district court finding prejudice. That determination, however, is for the district court to make in the first instance.

**46.** The Federal Public Defender, who is familiar with the case, would appear to be the appropriate choice if he is willing to serve.

**47.** We note, however, that Pennsylvania has a unified judicial system, *see* Pa. Const., Art. V § 2(a); *supra* at 1214 n. 16. The Pennsylvania Supreme Court has used its authority to assign other judges to Blair County, including Burkett's judge in 140/141, but the measures taken so far do not appear to have resolved the problems.

**48.** In *Schandelmeier* we reprinted excerpts from letters written by two federal magistrates to the Chief Judge of the U.S. District Court for the Western District of Pennsylvania. One wrote that cases involving egregious Blair County delays "appear to be the rule rather than the exception to practice in Blair, and present a continuous source of concern." A second suggested notifying the Honorable Robert N.C. Nix, Jr., Chief Justice of the Supreme Court of Pennsylvania, "so that hopefully he can arrange for Blair County to get additional help rather than for us to start ordering the release of Blair County prisoners because of speedy trial viola-

of all. For the reasons we have set forth, partial relief will be granted to Burkett now and he may attempt to obtain further relief on remand.

When a county justice system is unable to provide convicts with even the most rudimentary due process—decisions on whether they received fair trials, decisions whether and for how long they should be incarcerated, and performance of the ministerial tasks of compelling transcripts and transmitting records to the appellate courts—federal courts are compelled to grant relief when the violations reach constitutional dimensions, both to guard the rights of those who may have been falsely or unfairly accused and to guard the integrity of our justice system itself.

In No. 86–3074, the judgment of the district court will be affirmed.

In No. 86–3121, the judgment of the district court will be reversed. Concerning Blair County Criminal No. 161 of 1981, the case will be remanded for further proceedings consistent with this opinion. Concerning Nos. 140 and 141 of 1981, the case will be remanded to the district court with instructions to issue the writ of habeas corpus forthwith, discharging Burkett from his conviction on those charges.

Because we have reversed concerning two of Burkett's three convictions, costs in these consolidated appeals shall be taxed two-thirds against appellees and one-third against appellant.

GARTH, Circuit Judge, dissenting in part and concurring in part:

My disagreement with the majority stems from the majority's insistence that the district court issue a writ which would discharge Burkett's conviction under Criminal Actions Nos. 140 and 141. I disagree in three respects.

First, I believe that the majority has erroneously relied on a "law of the case" doctrine to find that Burkett has carried his burden of demonstrating prejudice. Second, because I believe that the majority

has erred in this respect, I cannot agree with the majority's decision to decline to reach the issue of whether a court can find a post-verdict speedy trial violation without first finding that the defendant was prejudiced by the post-verdict delay. I conclude that a finding of prejudice is crucial not only to the legal conclusion that a speedy trial violation has resulted from a post-conviction sentencing delay, but also to the determination of the remedy to be imposed. Third, I conclude that it is the district court, not this court, which must decide in the first instance, not only whether Burkett has carried his burden of demonstrating prejudice, but also what remedy is appropriate if a speedy trial violation is found.

I.

The majority has concluded that Burkett has been prejudiced by his sentencing delay and that this prejudice has been established as the "law of the case." Maj.Op., at 1222. The majority "discovers" prejudice from the fact that, in March 1985, a magistrate, without a hearing or other evidence before him, speculated that it would "appear reasonable to conclude" that the delay caused some loss to Burkett even though Burkett had been incarcerated on two unrelated convictions for 16 to 32 and 22 to 44 years. Supplemental Appendix at 11. Incredibly, the finding of prejudice, according to the majority, is disclosed by the order, entered May 30, 1985, which *dismissed* Burkett's writ!

To my mind, the magistrate's report, when read as a whole, contained nothing that properly could be termed a finding that prejudice was demonstrated, and, to the limited extent that the magistrate even discussed prejudice, his argument was unsound and unsupported by evidence. The magistrate argued that although one might reasonably conclude that there was some prejudice present, the degree of prejudice

---

tions." *Id.,* at 55. Although we did not grant relief to Schandelmeier, who (unlike Burkett) did not appear to have pressed the issue of delay

in the state courts, we sent a copy of our then unpublished opinion to Chief Justice Nix. We do so again with today's opinion.

did not appear to him to be particularly great in comparison to other cases.[1]

Even if I were to conclude, as does the majority, that the vague language from the magistrate's report constituted a "finding" of the existence of prejudice, such a finding would have to be reversed on appeal as a conclusory "finding" that is completely unsupported by evidence. The magistrate conducted no hearings and took no testimony concerning, for example, whether prosecuting Burkett's appeal has been made more difficult by the delay. Moreover, I suggest that it is impossible, if not outrageous, to conclude, as apparently the majority has, that an individual who is already incarcerated on two unrelated charges (and is serving a term of at least 22 years) is prejudiced as a matter of law by being subjected to a delay (even one of five and one-half years) while awaiting a sentencing decision on a third unrelated conviction.

Although facts *might* be established to demonstrate prejudice in such a case, we have yet to be shown by Burkett that this is such a case. It is for that reason that a hearing is required to determine whether the requisite prejudice does in fact exist.[2] *See United States v. James,* 459 F.2d 443, 444–45 (5th Cir.), *cert. denied,* 409 U.S. 872, 93 S.Ct. 202, 34 L.Ed.2d 123 (1972) (individual who had already been sentenced on two unrelated charges denied relief after unreasonable sentencing delay on third charge because no prejudice found).

The majority also argues that the County has waived its right to contest the "finding" of prejudice because it did not attempt to appeal the district court's order. Maj. Op., at 1223. But even if the County had been sufficiently prescient to construe the magistrate's vague language as a finding of prejudice, the County cannot be deemed to have waived any objection to such a finding because the County would not have been permitted to seek review of an isolated "finding" of fact. Findings of fact are not appealable, orders are; and the County was not aggrieved by the order which dismissed Burkett's petition for writ of habeas corpus. Thus, in my opinion, the majority has been obliged to torture both the language and the analysis of the district court's order in an effort to find a basis for its conclusion that the May 30, 1985 order was one which could be appealed by Blair County.[3] *See* Maj.Op., at 1223 n. 35.

---

1. The magistrate's report reads, in part:

 "As the Court recognized in *Smith v. Hooey,* 393 U.S. 374, 378 [89 S.Ct. 575, 577, 21 L.Ed.2d 607] (1969), where delay occurs, an individual *may* lose certain advantages such as receiving concurrent sentences and may even receive an enhanced sentence.

 While the extent of prejudice cannot be measured with exactitude, it *would appear reasonable to conclude* that the delay by the Blair County courts has caused some loss to the petitioner. . . .

 Nevertheless, in view of the fact that the petitioner could recieve [sic] a sixty-one to a one hundred and twenty-two year sentence, *it would appear that the degree of prejudice which might have occurred is not as critical as in some other Blair County cases* where the possible period of incarceration is much shorter . . ."

 Supplemental Appendix at 10–12 (emphasis added). It is on the basis of these "findings" of the magistrate that the majority has chosen to mandate that the district court enter an order dismissing Burkett's convictions as to Criminal Actions Nos. 140 and 141.

2. Indeed, as I read Burkett's brief, there is only one allegation of prejudice raised in respect to his sentencing delay in Criminal Actions Nos. 140 and 141. Burkett claims that he was prejudiced because he was forced to spend time incarcerated without an opportunity for appellate review (which cannot be had before the imposition of sentence). However, I note that Burkett would be spending this time in prison regardless of the disposition of his appeals in Criminal Actions Nos. 140 and 141, because he has been sentenced to 16 to 32 years under Criminal Action No. 284 and 22 to 44 years under Criminal Action No. 161.

3. The majority also argues that the May 30, 1985 order was a final order. I do not dispute this fact, but it proves nothing. A certificate of probable cause was never issued from the district court's May 30, 1985 order, which is the order adopting the magistrate's finding that "it would appear reasonable to conclude that the delay . . . has caused some [prejudice]." Therefore, Burkett could not appeal, *see* 28 U.S.C. § 2253 (no appeal allowed unless a certificate of probable cause issues); nor could Blair County appeal as it was not aggrieved, *see* note 5, *infra.*

 It was obviously for this reason that Burkett, in accordance with the district court's direction, filed a new petition. Thus, the majority's "law of the case" theory simply cannot withstand analysis because even if Blair County believed that the magistrate's report contained a finding of prejudice, and even if Blair County desired to

The majority has chosen to disregard the clear language of the district court's order of May 30, 1985, which dismissed Burkett's petition. Instead, it has chosen to construe the order as one granting "conditional approval" of the writ. Maj.Op., at 1213 n. 10 & 1223 n. 35. Such a reading is clearly untenable. The district court's order: (1) *denies* the petition for habeas corpus relief; (2) *directs* that Blair County dispose of the post-trial motions and impose a sentence within sixty days; and (3) *recommends* that Burkett file a *new* petition for habeas relief if Blair County fails to act in accordance with the court's directive.[4]

The majority has obviously ignored the clear language of the district court's order, which denied Burkett's petition and directed that a new one be filed if appropriate. Alternatively, if the majority has not ignored the district court's order, then it must believe that a district court is somehow empowered to grant a future writ of habeas corpus—one that has not yet been filed!

Moreover, if "conditional approval" of the writ had been granted, then Burkett would have had no need to have appealed to this court, for his petition would have been successful, and he would have already obtained his relief. Because Blair County had not met the conditions of the writ's denial within sixty days, the "conditional grant" of habeas corpus would have taken effect thereafter, and Burkett would have been freed by the district court's order. This, of course, is not what happened because that, of course, was not what the district court ordered.[5]

The majority has concluded that Burkett has been prejudiced by the delay in sentencing despite the fact that Burkett's incarceration has not been due to the state court's failure to sentence him under Criminal Actions Nos. 140 and 141. Rather, Burkett's incarceration is due to the unrelated convictions under Criminal Action No. 284 (under which Burkett is serving a sentence of 16 to 32 years) and Criminal Action No. 161 (under which Burkett is serving a sentence of 22 to 44 years).

Because I do not believe that delay alone is sufficient to establish a speedy trial violation in a post-conviction context, and because I cannot agree that the record discloses any prejudice or that the majority's flawed law of the case doctrine can furnish prejudice where none exists, I cannot agree with the majority's decision to order the district court to discharge Burkett's convictions in Criminal Action Nos. 140 and 141.

## II.

Because the majority insists upon holding that a finding of prejudice has already been made and thus constitutes the "law of the case," it righteously declines to reach the legal issue of whether a finding of prejudice to the defendant is a prerequisite

---

dispute such a finding, it could not do so because neither party could appeal the May 30, 1985 order which adopted the suspect finding. Having no opportunity to challenge the May 30, 1985 order, Blair County cannot have waived any objections it might have had to the findings that may appear therein.

Although the majority claims that I have found "that the procedure in the district court in May 1985 was so defective that we cannot rely on its findings," maj. op., at 1226 n. 43, the majority misunderstands my position. I do not claim that the procedure in the district court was defective. I argue only that there was no finding of prejudice made.

**4.** The May 30, 1985 order reads in pertinent part:

"IT IS ORDERED that the petition of Wayne Burkett for a writ of habeas corpus is dismissed. and that a certificate of probable cause is denied, unless the Court of Common Pleas of Blair County fails to dispose of the post-trial motions and impose any appropriate sentence within sixty (60) days.

IT IS FURTHERED ORDERED that in the event that the Court fails to act in accordance with this directive that the petitioner file a new petition, that jurisdiction on the merits be assumed by this Court and that an appropriate merits determination be made."
Appendix at 154.

**5.** I am also confident that, if the County had attempted to appeal the district court's order under this improbable theory of "conditional grant" of relief, this court would have been compelled to hold that no appellate jurisdiction obtained because the County as appellant was in no way aggrieved by the order entered. *Perez v. Ledesma,* 401 U.S. 82, 87 n. 3, 91 S.Ct. 674, 678 n. 3, 27 L.Ed.2d 701 (1971) (a prevailing party may not appeal a decision in its favor).

to a post-verdict speedy trial violation. Maj.Op., at 1223, n. 36. I, however, am forced to confront this legal question because I cannot accept the majority's "law of the case" theory. I conclude that a true, not a manufactured, finding of prejudice to the defendant is crucial to the legal conclusion that a speedy trial violation has resulted from a post-conviction sentencing delay.

Although I agree with the majority's general conclusion that a defendant's constitutional right to a speedy trial must be upheld post-conviction as well as pre-trial, *see, e.g. United States v. Campisi,* 583 F.2d 692 (3d Cir.1978), I believe that significant differences are found between the two situations. As the Tenth Circuit recently pointed out in *Perez v. Sullivan,* 793 F.2d 249, 254 (10th Cir.), *cert. denied,* —— U.S. ——, 107 S.Ct. 413, 93 L.Ed.2d 364 (1986):

> Obviously a delay in sentencing involves considerations different from those related to pre-trial delay. The alteration of the defendant's status from accused and presumed innocent to guilty and awaiting sentence is a significant change which must be taken into account in the balancing process. Once guilt has been established in the first instance the balance between the interests of the individual and those of society shift proportionately.

As the court in *Perez* noted, the major considerations underlying the constitutional right to a speedy trial may be grouped into two categories: societal interests and interests of the individual defendants. For the accused individual, lengthy *pre-trial* delay impinges upon his rights because, even if he is not incarcerated prior to trial, the pre-trial delay forces him to "liv[e] under a cloud of anxiety, suspicion, and often hostility." *Barker v. Wingo,* 407 U.S. 514, 533, 92 S.Ct. 2182, 2193, 33 L.Ed.2d 101 (1972). The disruption of an individual's life while awaiting trial, especially when subjected to pre-trial incarceration, will usually be substantial. "The time spent in jail awaiting trial has a detrimental impact on the individual. It often means loss of a job; it disrupts family life; and it enforces idleness. Most jails offer little or no recreational or rehabilitative programs. The time spent in jail is simply dead time." *Id.,* at 532–33, 92 S.Ct. at 2193. Under our system of law, whereby an individual is presumed innocent until proven guilty, such considerations are and should be given substantial weight. Yet these considerations lose much of their force in the post-conviction context.

*Post-conviction,* there is less fear that an innocent individual is being improperly subjected to the deprivations inherent in incarceration. Although the individual is subjected to some uncertainty, the post-conviction uncertainty differs both in degree and in kind from the pre-trial uncertainty. As I have observed, *pre-trial* an individual's anxiety revolves around a finding of innocence or guilt, freedom or deprivation of liberty. *Post-conviction* the individual knows that punishment is imminent; it is uncertain only as to degree.

Additionally, the societal interests in a speedy trial are less directly implicated in the post-conviction context. From society's point of view, the right to a speedy trial serves to insure that a just result has been achieved. "The inability of courts to provide a prompt trial has contributed to a large backlog of cases in urban courts which, among other things, enables defendants to negotiate more effectively for pleas of guilty to lesser offenses and otherwise manipulate the system. In addition, persons released on bond for lengthy periods awaiting trial have an opportunity to commit other crimes.... Moreover, the longer an accused is free awaiting trial, the more tempting becomes the opportunity to jump bail and escape." *Barker,* 407 U.S. at 519–20, 92 S.Ct. at 2186–87.

As is the case with interests of the individual defendants, the societal interests in a speedy trial are stronger in the pre-trial context than they are post-conviction. Post-conviction, society no longer needs to fear that delay will result in the criminal justice system's being deprived of the opportunity to mete out an appropriate punishment. Likewise, in the post-conviction context, societal fears that an accused individual will be able to thwart justice by manipulating delay to his advantage, are largely eliminated.

Additionally, the societal interest in limiting the possibility that a defense has been impaired by a lengthy delay, although applicable in both the pre-trial and post-conviction settings, is a much greater interest in a pre-trial context.[6] With long delays pre-trial, witnesses may disappear, their memories may fade, and other evidence may be lost. Although post-conviction delays can result in similar problems if an appeal is filed and it is determined that an evidentiary hearing is required, the individual who has already received a presumptively fair trial has suffered far less hardship than the pre-trial individual whose rights have been prejudiced while having his guilt adjudicated in the first instance.

Therefore, whenever the four factors enumerated by the Supreme Court in *Barker v. Wingo*, a case which concerned *pre-trial* speedy trial issues, have been applied to the post-conviction context, they have been applied with recognition given to this changed balance of interests. This change is manifested through a greatly increased emphasis on determining the prejudice, if any, suffered by the defendant. Indeed, prejudice is the polestar of any post-conviction speedy trial analysis.

> While a showing of prejudice may not be absolutely necessary in order to find a Sixth Amendment violation, we have great reluctance to find a speedy trial deprivation where there is no prejudice. This is especially true in a post-conviction situation. In fact, it might be said that once a defendant has been convicted it would be the rarest of circumstances in which the right to a speedy trial could be infringed without a showing of prejudice. Moreover, the necessity of showing substantial prejudice would dominate the four-part balancing test. This is so because of the traditional interests the speedy trial guarantee is designed to protect: (1) prevention of oppressive pretrial

incarceration; (2) minimizing anxiety and concern of the accused; and (3) limiting the possibility that the defense will be impaired....

> Most of those interests diminish or disappear altogether once there has been a conviction. Because the rights of society proportionately increase, the prejudice claimed by the defendant must be substantial and demonstrable.

*Perez,* 793 F.2d at 256 (citations omitted). *See also United States v. Merrival,* 600 F.2d 717, 720 (8th Cir.1979) (appellant must show prejudice before court can find his right to a speedy trial is violated by sentencing delay); *United States v. Campbell,* 531 F.2d 1333, 1335–36 (5th Cir.1976), *cert. denied,* 434 U.S. 851, 98 S.Ct. 164, 54 L.Ed.2d 121 (1977) (crucial question in determining whether sentencing delay resulted in violation of right to speedy trial is whether actual prejudice resulted); *Juarez-Casares v. United States,* 496 F.2d 190, 192 (5th Cir.1974) (violation of right to speedy trial has occurred when there has been unreasonable delay in sentencing and that delay has resulted in prejudice); *Brady v. Superintendent, Anne Arundel County Detention Center,* 443 F.2d 1307, 1310–11 (4th Cir.1971) (eight year sentencing delay had not resulted in sufficient prejudice to warrant release).

Therefore, as I understand the settled jurisprudence of the various circuits that have considered the special problem of applying the *Barker v. Wingo* speedy trial violation analysis in a post-conviction setting: (1) delay alone is insufficient to support a finding of constitutional violation; (2) the factor of prejudice becomes central to the inquiry; and (3) the burden to proof is on the defendant to establish prejudice.[7]

### III.

Finally, even if I were to assume, as does the majority, that Burkett has met his bur-

---

**6.** In *United States v. MacDonald,* 456 U.S. 1, 102 S.Ct. 1497, 71 L.Ed.2d 696 (1982), the Supreme Court noted that the Due Process Clause better protects against the prejudice caused by the mere passage of time than does the Speedy Trial Clause. *Id.* at 7–8, 102 S.Ct. at 1502. "The speedy trial guarantee is designed to minimize the possibility of lengthy incarceration prior to

trial, to reduce the lesser, but nevertheless substantial, impairment of liberty imposed on an accused while released on bail, and to shorten the disruption of life caused by arrest and the presence of unresolved criminal charges." *Id.* at 8, 102 S.Ct. at 1502.

**7.** On burden of proof, *see, e.g., Juarez-Casares v. United States,* 496 F.2d 190, 192 (5th Cir.1974).

den of establishing prejudice, nevertheless I would not leap to the conclusion that dismissal of the charges is the proper remedy. The majority itself acknowledges that when the right to a speedy trial has been violated, only the prejudice of the violation must be rectified. Maj.Op., at 1220 (citing *Braden v. 30th Judicial Circuit Court of Kentucky,* 410 U.S. 484, 486, 93 S.Ct. 1123, 1125, 35 L.Ed.2d 443 (1973)) & at 1221 ("the remedy must be discharge with prejudice to retrial *if no lesser remedy can rectify the prejudice to the defendant*") (emphasis added).

Despite this clear holding that lesser remedies may be appropriate, the majority has refused to consider whether the prejudice suffered by Burkett—a prejudice which the majority assumes but which has not been found—could be cured by a lesser remedy than dismissal of the charges. This is undoubtedly because, in the absence of any real finding of prejudice, it is impossible to know what specific needs require remediation.

In some factual situations, it might be appropriate for the district court to impose the statutory minimum punishment, rather than order discharge. *See Brady,* 443 F.2d at 1311 (court cannot assume that any prejudice resulted from sentencing delay when statutory minimum punishment was imposed). Although I acknowledge that the remediation decision is for the district court and not for us, I just cannot believe that an individual such as Burkett (who has been convicted of serious crimes, including terroristic threats, burglary, theft, corruption of minors, and receiving stolen property, and whose actual prejudice, as the record reveals, is limited to being incarcerated, not on these charges, but on related unassailable convictions, *see* note 2, *supra*) is entitled to discharge as a matter of law as a result of sentencing delay.[8] Indeed, even if consideration were to be given to the "anxiety and uncertainty" discussed by the magistrate, those considerations, in the context of post-conviction delay, do not warrant discharge as a matter of law. *See Perez,* 793 F.2d at 257 ("the anxiety of an accused is not be equated for constitutional purposes with anxiety suffered by one who is convicted, in jail, unquestionably going to serve a sentence, and only waiting to learn how long that sentence will be").

The majority appears to believe that, when faced with a substantial delay in an individual's speedy trial rights, it is appropriate for this court to address unresolved factual issues concerning both prejudice and the proper remedy for any prejudice that is found. In my view, by so holding in this case, the majority has usurped the district court's traditional role of fact-finder. *See United States v. Campbell,* 531 F.2d 1333, 1336 (5th Cir.1976), *cert. denied,* 434 U.S. 851, 98 S.Ct. 164, 54 L.Ed.2d 121 (1977) (where no explicit finding of prejudice has been made, remand to district court is appropriate). Similarly, once prejudice has been found, it is the district court which should decide what remedial action is required.

While the majority's desire for an expeditious resolution of this matter is understandable in light of Blair County's long inaction, the procedure invoked, whereby the majority has departed from its role as an appellate court and has sought to find facts as to prejudice and to impose remedies, is unprecedented. In *Codispoti v. Howard,* 589 F.2d 135 (3d Cir.1978), this court was confronted with an appeal from a prisoner who had been waiting twelve years for the state court to rule on his motion for a new trial. Upon determining

---

**8.** In Criminal Action No. 140, Burkett was convicted of burglary, theft, receiving stolen property, terroristic threats, and corruption of minors. He was acquitted of indecent assault and indecent exposure. The jury was hung on the charges of rape and recklessly endangering.

In Criminal Action No. 141, Burkett was convicted of burglary, theft, receiving stolen property, and terroristic threats. He was acquitted of indecent assault, indecent exposure, and involuntary deviate sexual intercourse. The jury was hung on the charges of rape, recklessly endangering, and unlawful restraint.

In Criminal Action No. 161, Burkett was convicted of rape, aggravated assault, terroristic threats, indecent assault, indecent exposure, unlawful restraint, and recklessly endangering.

In Criminal Action No. 284, Burkett was convicted of burglary, attempted rape, recklessly endangering, terroristic threats, simple assault, and harassment.

that Codispoti had effectively exhausted his available state remedies, with appropriate guidelines, we *remanded* the case to the district court for an evidentiary hearing on the issues of delay and remedy. The disposition ordered in *Codispoti* is an exemplar of the appropriate exercise of appellate review and disposition:

> ... the record before us shows no valid explanation as to why the state court has waited almost twelve years to dispose of a post-trial motion. Presumptively such a delay should impel us to consider the prisoner's petition unless it can be shown that he has waived his appeal or some extraordinary occurrence has taken place.
>
> We will therefore remand this case to the district court for an evidentiary hearing to determine why the petitioner's new trial motion has not been disposed of. The burden of proof at this hearing shall rest with the respondent, James Howard. We recommend that the evidentiary hearing be conducted by the trial court and not by the magistrate.
>
> It is further ordered that if the trial court concludes that the delay is inexcusable, it should then determine whether there were errors committed at Codispoti's trial which were of a constitutional dimension. If there were constitutional violations, the court should further determine whether a new trial should be held or whether due to the passage of time the charges must be dismissed.

*Id.* at 142 (footnote omitted). Indeed, when, as in the instant case, the delay is in no way attributable to delay or inaction by the federal district court, a remand is the only permissible response.[9]

Consideration of the appropriate remedy becomes even more important when it is recognized that, due to a loss of judicial manpower, this court may soon be inundated with many similar cases from Blair County. *See Schandelmeier v. Cunningham*, 819 F.2d 52, 54–55 (3d Cir.1986). Indeed, there may be other counties in Pennsylvania where similar delays in sentencing have occurred. I do not think that this court should be the instrument for declaring wholesale releases of prisoners or discharges of convictions without the essential inquiry being made as to whether the affected prisoner has been prejudiced. *Cf. Harris v. Pernsley*, 820 F.2d 592 (3d Cir. 1987) (Garth, J., dissenting).

I do not mean to imply that I believe that a prisoner loses his constitutional right to a speedy trial because the state courts are overburdened. I am not urging that Burkett be denied relief, providing it is appropriate. Rather, I maintain only that, for both prudential and jurisprudential reasons, an evidentiary hearing must be held to determine whether Burkett has actually suffered prejudice sufficient to warrant dismissal of his conviction in Criminal Actions Nos. 140 and 141.

## IV.

Other than with respect to the majority's disposition of Burkett's conviction under Criminal Actions Nos. 140 and 141, I join the majority's opinion.

As to Burkett's conviction under Nos. 140 and 141, the majority does not dispute the fact that a post-conviction speedy trial violation cannot result in the dismissal of a

---

**9.** In support of its determination to discharge Burkett's conviction without an evidentiary hearing as to whether Burkett suffered prejudice, the majority relies on a statement made at oral argument by counsel representing Blair County, to the effect that the court "might appropriately [decide] to discharge and dismiss, after five and a half years." Maj.Op., at 1226 n. 41.

I suggest that the majority's reliance is misplaced. We have not always greeted concessions as being dispositive. Beyond that however, I do not believe that this concession can be given credit for two reasons. First, there is no authority that exists which would discharge a

prisoner in a post-conviction speedy trial context without a strong showing of prejudice by the prisoner. It is evident that the Assistant District Attorney representing Blair County at no time addressed the issue of prejudice.

Second, I do not think that we can abdicate to counsel our judicial function of deciding and implementing the law. As I have pointed out, delay alone is not sufficient in a post-conviction setting to constitute a constitutional violation. *See* discussion in text, *supra*.

Prejudice must be shown, and the mere fact that counsel, in the throes of an oral argument, does not recognize the prevailing jurisprudence, does not mean that we too can ignore it.

valid state conviction unless the prisoner has carried his burden of demonstrating prejudice sufficient to warrant discharge of his conviction. Maj.Op., 1223 n. 36.

The record in this case does not demonstrate that Burkett has even alleged colorable prejudice, let alone met his burden of demonstrating it. Thus, I believe that it should be the district court, in the first instance, before whom Burkett must demonstrate prejudice sufficient to carry his burden of establishing a constitutional violation and sufficient to warrant a remedy of discharge.

I therefore dissent from so much of the majority's decision which directs the district court to issue a writ which would discharge Burkett's conviction under Criminal Actions Nos. 140 and 141.[10]

**10.** I have not addressed the due process discussion that the majority opinion contains. I am somewhat puzzled by the majority's due process discussion, maj.op., at 1220–1222 & 1224–1226, inasmuch as the majority has held that, because a Sixth Amendment speedy trial violation has occurred, Burkett's conviction must be discharged. It would therefore appear superfluous to discuss due process doctrine, where the only result of such an analysis would be the imposi-

tion of a lesser remedy than the discharge already ordered. *See* Maj.Op., at 1222 (normal remedy for a due process violation is not discharge).

However, if the majority had remanded to the district court, as I have urged it to do, then of course it would have been appropriate for the district court to consider both the Sixth Amendment speedy trial and the Fifth Amendment due process claims.