**UNITED STATES of America, Plaintiff–Appellant/Cross–Appellee,**

v.

**Chauncy GRAY, Defendant–Appellee/Cross–Appellant.**

Nos. 01–5899, 01–5900.

United States Court of Appeals, Sixth Circuit.

Nov. 22, 2002.

Before DAUGHTREY and CLAY, Circuit Judges, and WILLIAMS,* District Judge.

PER CURIAM.

The defendant, Chauncy Gray, is before this court for the second time, his 1994 conviction for possession of cocaine with the intent to distribute and his 264–month sentence having been affirmed by this court in 1996. *See United States v. Gray,* No. 95–5521, 1996 WL 338657, 89 F.3d 836

(6th Cir. June 17, 1996) (unpublished *per curiam*). While that appeal was pending, Gray filed a motion for a new trial in the district court, where it languished for three years. Eventually, Gray's case was reassigned to a different district judge, who held that the motion lacked substantive merit but, nevertheless, granted him a new trial based on a purported violation of his due process right to "speedy adjudication." The government now appeals the district court's due process ruling, and the defendant cross-appeals the district court's ruling on the merits of his motion. We conclude that the district court was correct in rejecting the substance of the defendant's motion for a new trial, but incorrect in awarding him a new trial.

### FACTUAL AND PROCEDURAL BACKGROUND

During the early 1990s, a task force formed through the cooperation of the United States Drug Enforcement Agency and the Memphis Police Department began to suspect that defendant Chauncy Gray and his brother, Alvin Gray, were dealing in illegal drugs. The task force repeatedly received incriminating information on the Gray brothers, but felt that the tips were not sufficient to file formal charges.

As the investigation progressed, the task force noticed that Delbert Brooks, a convicted felon, frequented California Cars, a used car business owned by Chauncy Gray. The task force's surveillance did not reveal illegal drug activity between Brooks and the defendant, but the law enforcement officials believed that Brooks might possess some helpful information about the Grays. Aware that Brooks was in the country illegally, the task force arrested

---

* The Hon. Glen M. Williams, United States District Judge for the Western District of Vir-   ginia, sitting by designation.

Brooks on illegal immigration charges in July 1992. Upon his arrest, they took Brooks to the Germantown police precinct and later to a Hampton Inn hotel. At the hotel, Brooks agreed to cooperate with the government in its effort to arrest the Grays in exchange for remaining out of jail. Brooks worked with the task force until he was arrested in the fall of 1993 for conspiring to distribute one kilogram of cocaine.

Soon after his incarceration at the Mason Correctional Facility in late 1993, Brooks contacted Officer Richard Borgers. Brooks told Borgers that Shelby McCaster, another inmate at Mason, would be willing to testify against the defendant. Borgers met with Brooks at Mason in October 1993, and with Brooks and McCaster, separately, two weeks later. McCaster testified against the defendant at trial.

After his conviction, the defendant was incarcerated in the same facility as Brooks. Brooks thereafter told the defendant that he had been involved with Borgers and McCaster in securing the defendant's arrest and conviction. Chauncy Gray then filed a motion for a new trial based on newly discovered evidence, contending that the government, through the actions of Officer Borgers, intentionally created a false case against him. The district judge originally assigned to the case conducted hearings on the new trial motion in 1996 and 1997.

The testimony at the hearings elicited two directly conflicting factual scenarios concerning the conduct of Officer Borgers leading up to the defendant's arrest and conviction. The defendant presented the uncorroborated testimony of Brooks, who denied that Chauncy Gray had ever been involved with drugs and testified that he and McCaster had conspired to provide false testimony against the defendant in exchange for preferential treatment regarding their own criminal cases. Brooks claimed that he coached McCaster to testify against the defendant and that Borgers should have known that the testimony was false because "he ain't no fool, he been in the street working." Brooks further claimed that Borgers told him that if he was capable of making a case against Chauncy Gray, he would not be deported. He testified that his contact with the officers at the Hampton Inn hotel in 1992 amounted to a "kidnaping" rather than a cooperation meeting, and that when he testified against Alvin Gray, he was offered financial compensation by the government that he requested they give to charity. On cross-examination, Brooks testified that he was angry at the government for their decision to deport him, and that when he was angry he was willing to lie.

The government presented the testimony of several witnesses at the post-trial hearings. Borgers testified that although Brooks's 1992 arrest had led to Brooks working as a DEA informant, he had never promised Brooks that he would not be deported. Borgers also testified that Brooks, who had contacted him from the Mason correctional facility after his 1993 arrest, led him to McCaster. Borgers said that he was never given the impression either by Brooks or by McCaster himself that McCaster was being untruthful. McCaster testified that his testimony at trial was truthful and denied that he had been encouraged to lie by Borgers. McCaster also testified that Brooks was angry about his upcoming deportation. Finally, James Earl Robinson, another Mason prisoner who was originally scheduled to testify for the defendant at the new trial hearing, testified on behalf of the government that he had been pressured by the defendant to provide false testimony alleging the existence of a conspiracy. Specifically, he testified that in January

1997 while he, Brooks, and the defendant were all housed in the same holding room, the defendant passed Robinson a legal pad with questions and the desired answers.

Following the extended hearings on the motion, the matter was taken under advisement by the district judge in December 1997. In August 2000, he recused himself from the case, and it was reassigned to a second district judge. Following supplemental briefing by the parties, the judge entered an order granting Chauncy Gray a new trial based on the delay in the decision but specifically finding that on the merits, the motion for a new trial was unjustified. Both the government and the defendant now appeal that order.

### DISCUSSION

We review a district court's decision to grant or deny a motion for a new trial based upon newly discovered evidence for an abuse of discretion. *See United States v. Willis,* 257 F.3d 636, 642 (6th Cir.2001). Such an abuse of discretion occurs when the district court relies on an erroneous factual finding, misinterprets the applicable law, or applies the wrong legal standard. *See United States v. Turns,* 198 F.3d 584, 586 (6th Cir.2000).

In order to prevail on a new trial motion, a defendant generally must demonstrate that (1) the evidence was discovered following trial; (2) the evidence could not have been previously discovered through the exercise of due diligence; and (3) the evidence would likely produce an acquittal. *See United States v. Barlow,* 693 F.2d 954, 966 (6th Cir.1982). When the newly discovered evidence is designed to demonstrate perjury on the part of government witnesses, the defendant must show that testimony in question was both material and false and, moreover, that it was known to be false by the prosecution. *See United*

*States v. Farley,* 2 F.3d 645, 655 (6th Cir. 1993).

■ Based upon an evaluation of the evidence presented at the hearings, the district court held that the defendant had failed to meet his burden. The court found that the testimony provided by Brooks at the hearing was not likely to produce an acquittal because it was incredible on its face. Hence, the court held that Brooks's testimony failed to demonstrate that the McCaster's trial testimony was false or that, had Brooks been available to testify at the time of trial, his testimony would have resulted in an acquittal. This factual determination is not clearly erroneous. We note in particular that McCaster maintained the truth of his trial testimony throughout the hearings, and that Brooks's testimony was directly contradicted by the testimony of several more credible government witnesses. Additionally, Brooks had a motive to lie and testified that he would lie in situations where he was angry or saw personal benefit that could stem from his untruths. Accordingly, we conclude that the district court properly denied the defendant's motion for a new trial on its merits.

■ Because we find that there was no merit to the defendant's claim substantively, we further find that there was no procedural basis, constitutional or otherwise, for granting him a new trial, based solely on the delay in securing a decision on the merits. In reaching a contrary result, the district court applied the analysis utilized in our recent opinion in *United States v. Smith,* 94 F.3d 204, 207 (6th Cir.1996). There, reviewing a lengthy delay between a criminal defendant's conviction and his direct appeal, we looked to the four-prong speedy-trial analysis of *Barker v. Wingo,* 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), to decide whether the delay required retrial. Here, however, there was

no delay in the direct appeal process. Instead, it appears that the problem in this case was a *post-conviction* delay akin to that that might occur in a habeas context. *Cf. United States v. Kelly*, 790 F.2d 130 (D.C.Cir.1986) (motion for new trial filed by defendant who has exhausted his direct appeal held to be analogous to a habeas petition). In any event, were we to apply *Barker v. Wingo* to the facts of this case, it clearly would be necessary to conclude, as we do, that the defendant has wholly failed to show prejudice resulting from the delay in the ruling on his motion.

This omission is not only significant but dispositive. Although the Supreme Court held in *Barker* that no single factor of the four could be deemed "either a necessary or sufficient condition," 407 U.S. at 533, none of the decisions of this or any other circuit applying *Barker* to the appellate context has granted a due process speedy appeal motion absent a significant showing of prejudice. *See, e.g., Smith*, 94 F.3d at 211 (finding that three-year delay on appeal did not warrant due process remedy based on "presumptive prejudice" where government could rebut prejudice); *Harris v. Champion*, 15 F.3d 1538, 1559 (10th Cir.1994) ("Furthermore, we agree with the Ninth Circuit that, ordinarily, a petitioner must make some showing on the fourth factor—prejudice—to establish a due process violation."); *United States v. Tucker*, 8 F.3d 673, 676 (9th Cir.1993) (holding, en banc, that "a federal court may not exercise its supervisory powers to reverse a conviction absent a showing of prejudice"); *Simmons v. Reynolds*, 898 F.2d 865, 868 (2d. Cir.1990) (finding a due process violation where the defendant was exposed to "appreciable" prejudice); *Burkett v. Cunningham*, 826 F.2d 1208, 1219–21 (3d Cir.1987) (observing that while "all four factors are to be balanced in light of the facts and circumstances of the case, once a defendant has been convicted it would be the rarest of circumstances in

which the right to a speedy trial could be infringed without a showing of prejudice") (internal quotation omitted); *United States v. Johnson*, 732 F.2d 379, 381–82 (4th Cir.1984) (holding that although two-year delay in preparation of defendant's transcript might well have violated due process, he was not entitled to release since his appeal had been heard and found lacking in merit).

The purposes behind a guarantee of timely process on appeal, paralleling those implied in the right to a speedy trial, include "(1) prevention of oppressive incarceration pending appeal; (2) minimization of anxiety and concern of those convicted awaiting the outcome of their appeals; and (3) limitation of the possibility that a convicted person's grounds for appeal, and his or her defenses in case of reversal and retrial, might be impaired." *Harris*, 15 F.3d at 1559 (internal quotation omitted). Reviewing those factors in this case, we are led to the ineluctable conclusion that no prejudice has been established.

First, the defendant was not subject to *oppressive* incarceration while the motion was pending because, as it turned out, the new trial motion was without merit. *See United States v. Antoine*, 906 F.2d 1379, 1382 (9th Cir.1990) ("[W]hether [the defendant's] incarceration is unjustified and thus oppressive depends upon the outcome of the appeal on the merits, or subsequent retrial, if any. If his conviction was proper, there has been no oppressive confinement: he has merely been serving his sentence as mandated by law."). Second, there is no substantial proof offered by the defendant that his anxiety and concern awaiting the outcome of the new trial motion was any more significant than any other prisoner awaiting an appeal. *See Antoine*, 906 F.2d at 1383 (finding prisoner's failure to show any unique manifestation of anxiety makes the second prejudice

factor non-compelling). The defendant asserts that he has "experienced severe emotional distress and anguish over the past 3½ years due to the failure of the court to rule on my motion which, among other things, cause my former spouse to obtain a divorce from me due to my continued incarceration." However, he fails to provide any documentation supporting his assertions of emotional stress, and the incarceration that he blames for the breakup of his marriage has uniformly been held to be legally justified. Finally, there is no showing of any limitation that the delay in question has caused in connection with past or future litigation. Although Brooks, the defendant's key witness and the source of the purported "new evidence," has been deported, his testimony has been preserved should it ever be needed for some post-conviction purpose. Moreover, we need not ignore the fact that Brooks's testimony has been held to be incredible and, indeed, appears to be so on its face.

### CONCLUSION

We conclude that the district court's ruling on the merits of the defendant's motion for a new trial was correct. We therefore deny relief on Chauncy Gray's cross-appeal and AFFIRM that aspect of the district court's judgment. As to the government's appeal, challenging the district court's ruling that inordinate delay in denying the motion so deprived the defendant of due process that he should be given a new trial, we conclude that the district court's decision is without legal foundation. For that reason, the order granting a new trial is hereby VACATED and judgment is ENTERED for the plaintiff.