[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
DEC 18, 2007
THOMAS K. KAHN
CLERK

Nos. 05-15690 & 06-12753

D. C. Docket No. 93-00597-CR-KMM

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

REYNALDO RODRIGUEZ,

Defendant-Appellant.

Appeals from the United States District Court
for the Southern District of Florida

**(December 18, 2007)**

Before EDMONDSON, Chief Judge, DUBINA, Circuit Judge, and MARTIN,[*]
District Judge.

PER CURIAM:

---

[*] Honorable Beverly B. Martin, United States District Judge for the Northern District of
Georgia, sitting by designation.

## I. Factual and Procedural Background

Appellant Reynaldo Rodriguez, a former officer for the City of Miami Police Department, was convicted of conspiracy to possess cocaine with the intent to distribute, in violation of 21 U.S.C. § 846, on December 15, 1994, in the Southern District of Florida. Mr. Rodriguez appealed to this Court, which remanded the case on October 30, 2001.

The original appeal addressed an evidentiary ruling made by the district court at trial, denying Mr. Rodriguez the use of two affidavits as impeachment material.[1] Mr. Rodriguez was tried along with a number of co-conspirators, including Francisco Novaton and Oscar Cuni. Neither Mr. Novaton nor Mr. Cuni testified at trial, but the government introduced numerous hearsay statements made by them and recorded by investigators' wiretaps. The wiretap conversations were introduced under Federal Rule of Evidence 801(d)(2)(E), which permits the admission of out-of-court co-conspirator statements made in furtherance of the conspiracy. Federal Rule of Evidence 806 allows a party to impeach statements admitted under Rule 801(d)(2)(E) by means of any evidence that would be appropriate impeachment material were the declarant to testify from the witness

---

[1] Mr. Rodriguez also appealed the district court's denial of his motion to sever his trial. This Court affirmed the district court's ruling on that issue. United States v. Novaton, 271 F.3d 968, 990-91 (11th Cir. 2001).

2

stand. Mr. Rodriguez proffered two affidavits sworn by Mr. Novaton and Mr. Cuni ("the affidavits") that denied Mr. Rodriguez's participation in the conspiracy. He requested that he be allowed to use the affidavits to impeach the hearsay statements of Mr. Novaton and Mr. Cuni introduced at trial. The district court denied his request.

Mr. Rodriguez challenged the exclusion of the affidavits in his first appeal. To assist its decision, this Court requested that Mr. Rodriguez submit specific citations to the trial record, pointing out statements that would have been impeached by the affidavits. It was then discovered that the recorded conversations admitted as trial exhibits, along with accompanying transcripts and translations, had been lost. This Court remanded the case with instructions for the district court to determine whether any of the missing trial exhibits were relevant to Mr. Rodriguez's appeal. If there were relevant missing exhibits, the district court was to attempt to reconstruct them as provided in Federal Rule of Appellate Procedure 10(e). United States v. Novaton, 271 F.3d 968, 991-93 (11th Cir. 2001).

The remand also gave the district court the opportunity to reconsider its Rule 806 determination in light of this Court's intervening decision in United States v. Grant, 256 F.3d 1146 (11th Cir. 2001). The panel expressed no view on

whether <u>Grant</u> was controlling authority. It was left to the district court to assess the effect of <u>Grant</u>, if any, and grant Mr. Rodriguez a new trial as appropriate. <u>Novaton</u>, 271 F.3d at 993-94.

On September 9, 2005, the district court, having concluded that the record was adequately reconstructed to reconsider the Rule 806 matter, affirmed the exclusion of the affidavits (Dist. Ct. Order of Sept. 9, 2005, at 2-3). The district court found that "the affidavits were in fact intended to be used as substantive evidence, and not for impeachment" (<u>id.</u> at 4). They were therefore inadmissible hearsay and not proper impeachment material under Rule 806. The court noted that it would have been within its discretion to exclude the affidavits under Federal Rule of Evidence 403 as well, as "highly prejudicial" to the government and likely to lead to "jury confusion as to the proper use of such evidence as impeachment as opposed to substantive evidence" (<u>id.</u>). To be thorough, the court analyzed whether a new trial would be warranted in the event that the affidavits were erroneously excluded. It determined that the affidavits had little impeachment value, and that there was ample other evidence presented at trial to support the conviction (<u>id.</u> at 5-6). On April 26, 2006, the district court also denied Mr. Rodriguez's Motion for New Sentencing Hearing.

4

Mr. Rodriguez appeals from the district court's rulings on remand. He alleges a number of errors with regard to the exclusion of the affidavits, namely, that the record was not adequately reconstructed, that exclusion of the affidavits was error, and that he is entitled to a new trial. He further contends that his due process right to a timely appeal has been violated by the "lengthy, protracted and attenuated direct appeal process" in his case (Appellant's Br. 49). Finally, he argues that his sentence should be reconsidered in light of <u>United States v. Booker</u>, 543 U.S. 220 (2005), and that it was error for the district court to deny him a new sentencing hearing.

## II.    <u>Analysis</u>

### A.    **Reconstruction of the Record**

Reconstruction of the missing trial exhibits was undertaken by the United States Attorney's Office, which located the audiotapes that were admitted at trial and re-translated and re-transcribed them, using official court translators and reporters (Appellee's Br. 26). Mr. Rodriguez contends that there are "numerous material and significant errors, omissions and discrepancies" in the reconstructed transcripts, which he identified by comparing the reconstructed transcripts with the excerpts of the original transcripts that were available from the trial transcript (Def. Reynaldo Rodriguez's Mem. Regarding Errors & Omissions in

5

Government's "Reconstructed" Trs. 2). The district court held a series of five evidentiary hearings to evaluate the reconstruction effort and concluded, over Mr. Rodriguez's objection, that the government had adequately reconstructed the missing evidence in accordance with the remand instructions (Dist. Ct. Order of Sept. 9, 2005, at 2).

Federal Rule of Appellate Procedure 10(e) provides that when reconstructing the trial record, "[i]f any difference arises about whether the record truly discloses what occurred in the district court, the difference must be submitted to and settled by that court . . . ." Fed. R. App. P. 10(e)(1). "[S]ubstantial and significant omissions from the verbatim transcript do not mandate a reversal if . . . the record can be adequately reconstructed to accord effective appellate review." United States v. Cashwell, 950 F.2d 699, 704 (11th Cir. 1992). Nor does the reconstructed record have to be identical to the original transcripts and exhibits used in the trial. Novaton, 271 F.3d at 993.

A district court's decision in reconstructing the record should be upheld "absent a showing of intentional falsification or plain unreasonableness." United States v. Mori, 444 F.2d 240, 246 (5th Cir. 1971); see also United States v. Zichettello, 208 F.3d 72, 93 (2d Cir. 2000); United States v. Keskey, 863 F.2d 474, 478 (7th Cir. 1988). There is certainly no evidence that the district court's

ruling was intentionally false. Neither is it plainly unreasonable. The court held numerous evidentiary hearings on the matter and gave Mr. Rodriguez ample opportunity to present his arguments, all of which the court considered. The district court did not err in ruling that the record reconstruction was sufficient to afford Mr. Rodriguez effective review on the evidentiary question.

### B. Exclusion of the Affidavits

Evidentiary rulings are reviewed for abuse of discretion, and will stand absent a "reasonable likelihood that [an error] affected the defendant's substantial rights." United States v. Hawkins, 905 F.2d 1489, 1493 (11th Cir. 1990). An error is harmless "if the error 'had no substantial influence on the outcome and sufficient evidence uninfected by error supports the verdict.'" United States v. Hands, 184 F.3d 1322, 1329 (11th Cir. 1999) (quoting United States v. Fortenberry, 971 F.2d 717, 722 (11th Cir. 1992)).

The statements admitted at Mr. Rodriguez's trial were numerous taped telephone conversations, involving what the government asserted were coded references to drug transactions that established the existence of the conspiracy and Mr. Rodriguez's participation in it. A statement offered for impeachment purposes must be inconsistent with the statement already in evidence. "[T]he point of admitting inconsistent statements to impeach is not to show that they are

7

true, but to aid the jury in deciding whether the witness is credible." Grant, 256 F.3d at 1156 (citing United States v. Graham, 858 F.2d 986, 990 n.5 (5th Cir. 1988)).

Mr. Novaton's affidavit states generally that "Reynaldo Rodriguez did not conspire with me, or to my knowledge with anyone else, to possess with intent to distribute cocaine at any time in 1993," and that Mr. Rodriguez "did not provide protection, security or counter-surveillance for me, or to my knowledge for anyone else, at any time during 1993" (Aff. of Francisco Novaton ¶ 3). More specifically, "on October 12, 1993, [Mr.] Rodriguez did not provide security at my residence . . . while an alleged sale of cocaine took place" (id.). "[O]n December 5, 1993, [Mr.] Rodriguez did not discuss with me and Oscar Cuni an alleged narcotics debt owed by Novaton to Cuni" (id.). The affidavit denies Mr. Rodriguez's participation in other acts alleged in the indictment, and states that Mr. Rodriguez only came to the Novaton house "to eat, use the bathroom facilities, engage in Santeria worship, and for other personal reasons" (id.). Mr. Cuni's affidavit reiterates that Mr. Rodriguez did not conspire to possess cocaine with the intent to distribute, did not provide security or counter-surveillance to the conspiracy, and did not discuss a narcotics debt on December 5, 1993 (Aff. of Oscar Cuni ¶ 3).

8

The district court pointed out that any use of the affidavits by Mr. Rodriguez was "simply a pretext for their otherwise impermissible use as substantive evidence" (Dist. Ct. Order of Sept. 9, 2005, at 4). We agree that the affidavits are "post-indictment, conclusory, self-serving statements made in anticipation of litigation," when the affiants had "significant incentive to make false exculpatory statements" (id.).[2] The affidavits do not attack the credibility of either Mr. Novaton or Mr. Cuni as Rule 806 would require. Instead, they attack the government's interpretation of the statements as a conspiracy, and attempt to exonerate Mr. Rodriguez. Such a use does not constitute impeachment.

Grant is distinguishable from this case. The statements admitted in Grant under Rule 801(d)(2)(E) were co-conspirator Wilson's statements to an undercover agent that he had a partner who was involved in cocaine distribution. The government produced other evidence at trial suggesting that the partner was Grant. Later, Wilson swore out an affidavit to the effect that he did not have a partner and had lied to the agent about having a partner. Grant, 256 F.3d at 1152-53. This Court ruled that Wilson's affidavit was admissible as impeachment

---

[2] On Mr. Rodriguez's original appeal, this Court agreed with the district court's assessment of the affidavits at trial, and referred to them as "conclusory denials of the charges in the indictment" that did "not contain the type of specific and exonerative facts which would establish that the district court abused its discretion in denying the motions." Novaton, 271 F.3d at 990 (ruling on Mr. Rodriguez's motion to sever the trials of the co-conspirators).

material under Rule 806. The co-conspirator statements made by Wilson "circumstantially link[ed] Grant to the conspiracy. At the very least, [they] indicated that Wilson had a co-conspirator. . . . Wilson's statements in the proffered affidavit, however, indicate that he had no co-conspirator and, further, that Grant had no involvement in Wilson's drug transactions." Id. at 1153-54. Wilson's statements to the undercover officer and his statements in the affidavit directly contradicted one another.

The co-conspirator statements admitted against Mr. Rodriguez, by contrast, were coded and were interpreted at trial by government agents. See Novaton, 271 F.3d at 981-82. Mr. Rodriguez's proffered affidavits contradict only the interpretation of the statements, not the statements themselves. For example, Mr. Novaton never called Mr. Rodriguez and expressly asked him to provide security. The affidavits contradict the government's assertion of the existence of a conspiracy, but they are not inconsistent with the statements the government used to establish the conspiracy. The affidavits are inadmissible hearsay, offered as substantive evidence, and not impeachment material. See Graham, 858 F.2d at 990 & n.5.

The district court relied in the alternative on Federal Rule of Evidence 403 to exclude the affidavits. Under the Federal Rules of Evidence, all evidence is

subject to the probative-prejudicial balancing test of Rule 403. United States v. Hewes, 729 F.2d 1302, 1314 (11th Cir. 1984). In practice, district court judges may issue their rulings on the basis of one Rule and, in the alternative, on the basis of Rule 403. See, e.g., United States v. Anderson, 872 F.2d 1508, 1514-15 (11th Cir. 1989); Alimenta (U.S.A.), Inc. v. Stauffer, 598 F. Supp. 934, 941 (N.D. Ga. 1984). Though Rule 403 is an "extraordinary" remedy to be used "sparingly," United States v. Betancourt, 734 F.2d 750, 757 (11th Cir. 1984), a district court's ruling based on Rule 403 will not be overturned unless it constitutes a clear abuse of discretion. United States v. Pomerantz, 683 F.2d 352, 353 (11th Cir. 1982). The district court found that the affidavits were of "dubious" probative value, but were highly prejudicial to the government and likely would have confused the jury on the issue of impeachment as opposed to substantive evidence (Dist. Ct. Order of Sept. 9, 2005, at 4). The court's analysis of the balance was well within its discretion. Thus, we find no abuse of discretion by the trial judge in excluding the proffered affidavits.

The district court also correctly concluded that Mr. Rodriguez was not entitled to a new trial. To challenge a jury verdict on the basis of an erroneous evidentiary ruling by the district court, the challenger must preserve his objection, demonstrate an abuse of discretion by the district court, and show that the error

affected his substantial rights.  United States v. Stephens, 365 F.3d 967, 974 (11th Cir. 2004).  An error affects the defendant's substantial rights if it "probably had a 'substantial influence' on the jury's verdict."  Id. at 976-77 (quoting Kotteakos v. United States, 328 U.S. 750, 765 (1946)).  Mr. Rodriguez has preserved his objection to the district court's exclusion of his affidavits, but he has not established that the district court abused its discretion.  Even if he were able to make such a showing, the exclusion cannot be said to have substantially influenced the jury's verdict because there was sufficient other evidence, unrelated to the affidavits, to support his conviction (Dist. Ct. Order of Sept. 9, 2005, at 5-6).

The trial evidence showed that Officers Rodriguez and Lopez drove slowly by the Novaton residence several times a day.  The Novaton household received calls from a Miami Police Department telephone located very near Officer Lopez's office.  On October 23, 1993, federal agents arrested cocaine purchasers leaving the Novatons' and seized three kilograms of cocaine.  Mrs. Novaton called her husband, who was with Mr. Rodriguez at the time, to report that the purchaser had been "caught with three."  Mr. Rodriguez then accompanied Mr. Novaton back to his home.  On November 9, 1993, Mrs. Novaton asked Mr. Rodriguez for information about another seizure of drugs that had occurred three days earlier.

Mr. Rodriguez went to the Novaton residence with the requested information. On November 17, 1993, Mr. Rodriguez reported a "phantom drug delivery" in order to identify the undercover police cars used to investigate drug deals. On November 20, 1993, another co-conspirator abandoned his car, in which he was transporting drug proceeds, because he feared he was being followed. He called Mrs. Novaton, who in turn contacted her husband and the two officers. Mr. Rodriguez helped to recover the car and the drug proceeds, and was treated to free food, drink, and possibly prostitutes that night at a bar owned by Mr. Cuni. Both Officers Rodriguez and Lopez were observed escorting various individuals to the Novaton household over this period of time. Novaton, 271 F.3d at 980-82. Sufficient evidence unrelated to the affidavits was presented at trial to convict Mr. Rodriguez.

Mr. Rodriguez argues that the length of the jury's deliberations indicates that it was a close case, and that the affidavits could have swung the balance. However, there is no way of knowing whether the jury had trouble reaching a conclusion on the conspiracy charge for which Mr. Rodriguez was convicted, as opposed to the charges of which he was acquitted (Dist. Ct. Order of Sept. 9, 2005,

13

at 6).[3]  Therefore, even if we were to assume that the exclusion of the affidavits

was an abuse of the district court's discretion (which we have held it was not), it

would amount to harmless error and would not merit a new trial.  See Stephens,

365 F.3d at 976 n.11.

## C.    Delay on Appeal as a Due Process Violation

If a state offers convicted criminals a right to appeal, the right is subject to

the requirements of due process.  Rheuark v. Shaw, 628 F.2d 297, 302 (5th Cir.

1980).  "[A]ny substantial retardation of the appellate process, including an

excessive delay in the furnishing of a transcription of testimony necessary for

completion of an appellate record," can constitute a denial of due process.  Id. at

302.  To analyze a due process claim, the Rheuark court adopted the four factors

used to assess speedy trial violations:  the length of the delay; the reason for the

delay; defendant's assertion of his right; and prejudice to the defendant.  Id. at 303

& n.8; see Barker v. Wingo, 407 U.S. 514, 530 (1972).[4]

---

[3] The jury acquitted Mr. Rodriguez of two counts of possession of cocaine with intent to distribute, in violation of 21 U.S.C. § 841(a)(1), and one count of knowingly carrying a firearm during and in relation to a drug trafficking offense, in violation of 18 U.S.C. § 924(c)(1). Novaton, 271 F.3d at 982-83.

[4] Most of the other circuits use the Barker factors to analyze due process claims of delay on appeal as well.  See United States v. Smith, 94 F.3d 204, 208 (6th Cir. 1996); United States v. Hawkins, 78 F.3d 348, 350 (8th Cir. 1996); United States v. Mohawk, 20 F.3d 1480, 1485 (9th Cir. 1994); Simmons v. Reynolds, 898 F.2d 865, 868 (2d Cir. 1990); Burkett v. Cunningham, 826 F.2d 1208, 1225 (3d Cir. 1987); United States v. Johnson, 732 F.2d 379, 381-82 (4th Cir.

The first <u>Barker</u> factor, the length of the delay, serves as a "triggering mechanism." There must be a "presumptively prejudicial" delay before a court will consider the other factors. <u>Barker</u>, 407 U.S. at 530. We assume the 12 year span between Mr. Rodriguez's conviction and his current appeal amounts to a presumptively prejudicial delay. However, not every delay, "even an inordinate one," violates due process. <u>Rheuark</u>, 628 F.2d at 303. All four factors must be evaluated.

The process of discovering that the trial record was incomplete and reconstructing that record are the main reasons for the delay in this case. Included in this time period was the time it took for the government to re-translate and re-transcribe the audiotapes to replace the missing exhibits, a task that began on October 31, 2002, and was completed on April 20, 2004 (Appellant's Br. 7-8; Appellee's Br. 11-12). The district court held evidentiary hearings on October 29, 2002, August 11, 2003, March 22, 2004, April 23, 2004, and July 15, 2004 (Dist. Ct. Order of Sept. 9, 2005, at 2). We find that the delay in the government's reconstruction of the evidence was reasonable given the amount of information that needed to be sorted, re-translated, and re-transcribed (<u>see</u> Appellee's Br. 46).

1984). The First Circuit hinges its inquiry on a showing of prejudice alone. <u>United States v. DeLeon</u>, 444 F.3d 41, 56-57 (1st Cir. 2006).

The numerous status conferences, hearings, and motions and memoranda filed by Mr. Rodriguez during this time also make clear that the case did not lie idle for long periods. The length of the delay was reasonable in light of the number of issues that had to be worked out.

The third Barker factor requires that the defendant assert his right. Mr. Rodriguez asserts his right here in his timely appeal of the district court's most recent order, and has properly preserved his objections.

The fourth factor is prejudice, which is assessed "in light of the interests of those convicted of crimes to an appeal of their convictions unencumbered by excessive delay." Rheuark, 628 F.2d at 303 n.8. The interests are: "(1) prevention of oppressive incarceration pending appeal; (2) minimization of anxiety and concern of those convicted awaiting the outcome of their appeals; and (3) limitation of the possibility that a convicted person's grounds for appeal, and his or her defenses in case of reversal and retrial, might be impaired." Id. Mr. Rodriguez's incarceration is not oppressive because his appeal has been evaluated and found to be without merit. See United States v. Tucker, 8 F.3d 673, 676 (9th Cir. 1993) ("[Appellant's] incarceration was not oppressive because his appeal is meritless."); Muwwakkil v. Hoke, 968 F.2d 284, 285 (2d Cir. 1992) ("[Petitioner] has produced no evidence that prompt disposition of his appeal would have

16

yielded a different outcome."); <u>United States v. Johnson</u>, 732 F.2d 379, 382-83

(4th Cir. 1984) (holding that where "the appeal has been heard and found lacking

in merit[,] there is not any sound reason to order defendant's release" even though

the delay may have violated due process).  There is no indication that Mr.

Rodriguez's anxiety over his appeal is greater than that of any other imprisoned

appellant.  <u>See</u> <u>Tucker</u>, 8 F.3d at 676.  Finally, the delay has not impaired Mr.

Rodriguez's appeal, or any defenses on a possible retrial, because there is no merit

to his appeal in the first place.  <u>See</u> <u>id.</u>; <u>Muwwakkil</u>, 968 F.2d at 285; <u>Johnson</u>, 732

F.2d at 382-83.  Mr. Rodriguez cannot show that he has suffered prejudice due to

the delay, and therefore he is entitled to no relief.

## D.    Re-Sentencing in Light of <u>Booker</u>

Based on the United States Sentencing Guidelines, the district court

imposed a sentence of 292 months on Mr. Rodriguez.  The court attributed at least

50 kilograms of cocaine to Mr. Rodriguez, for a base level of 36, added two points

for possession of a dangerous weapon, and two more for abuse of public trust

(Appellant's Br. 53-55).  On October 30, 2001, this Court remanded Mr.

Rodriguez's first appeal to the trial court.  While the case was still on remand, on

January 12, 2005, the United States Supreme Court decided <u>United States v.</u>

<u>Booker</u>, 543 U.S. 220 (2005), which invalidated the mandatory application of the

17

Sentencing Guidelines.  Because the district court judge applied the Sentencing Guidelines in a mandatory fashion, Mr. Rodriguez argues that he should be resentenced under the now-controlling Booker regime.

Booker was decided when Mr. Rodriguez's case was on a limited remand to the trial court.  In his first appeal, Mr. Rodriguez and his co-defendants objected to their sentences based on issues decided by the United States Supreme Court in Apprendi v. New Jersey, 530 U.S. 466 (2000).  See Novaton, 271 F.3d at 1016.  This Court considered those arguments, rejected them, and affirmed Mr. Rodriguez's sentence.  Id. at 1018.  Thus, Mr. Rodriguez's 292 month sentence stands as the law of the case.

Appellate courts are still expected to apply "ordinary prudential doctrines." Booker, 543 U.S. at 268.  The doctrine of law of the case is generally referred to as an ordinary prudential doctrine.  See Patterson v. Haskins, 470 F.3d 645, 660-61 (6th Cir. 2006); Brown v. Bryan County, 219 F.3d 450, 475 (5th Cir. 2000); Sinaloa Lake Owners Ass'n v. City of Simi Valley, 70 F.3d 1095, 1102 (9th Cir. 1995); Commercial Union Ins. Co. v. Walbrook Ins. Co., 41 F.3d 764, 770 (1st Cir. 1994).  Law of the case binds both the district court and the appellate court to the factual findings and legal conclusions reached by the appellate court on a previous appeal of the same case.  United States v. Stinson, 97 F.3d 466, 469 (11th

Cir. 1996).  On remand, the district court is "not to assert jurisdiction over matters outside the scope of a limited mandate."  United States v. Tamayo, 80 F.3d 1514, 1520 (11th Cir. 1996).  The 2001 remand in this case gave limited jurisdiction to the district court to examine the record, and reconstruct exhibits if necessary, with the opportunity to review its earlier ruling under Rule 806.  Law of the case dictates that the district court cannot revisit sentencing under such a limited mandate.

An exception to the law of the case doctrine arises if controlling authority has since made a contrary decision of law applicable to that issue.  Stinson, 97 F.3d at 469.  Mr. Rodriguez argues that contrary and controlling authority, in the form of Booker, now applies to his case.

The 2001 remand did not concern sentencing.  The "only issues remaining relate to [Mr.] Rodriguez's Rule 806 argument."  Novaton, 271 F.3d at 993.  The sentencing, like other factual and legal conclusions, is law of the case and will not be disturbed.  Compare United States v. Amedeo, 487 F.3d 823, 830 (11th Cir. 2007) (finding Booker to be "an intervening change in the law of sentencing that made a contrary decision of law applicable" when the case had been remanded for re-sentencing); United States v. Puche, 155 Fed. Appx. 487, 492 (11th Cir. 2005) (ruling that re-sentencing was appropriate in light of Booker because the remand

19

had included specific instructions to the district court to sentence under the Guidelines); with United States v. Correa, 197 Fed. Appx. 857, 857-58 (11th Cir. 2006) (holding reconsideration under Booker was inappropriate because the remand was for the limited purpose of correcting a scrivener's error); Burrell v. United States, 467 F.3d 160, 165-66, 166 n.4 (2d Cir. 2006) (concluding that defendant's sentence was the law of the case because the remand was strictly for ministerial purposes, though re-sentencing in light of Booker may have been appropriate had the remand been for re-sentencing).

This Court's 2001 remand was unrelated to Mr. Rodriguez's sentence. Law of the case precludes Mr. Rodriguez from now challenging his sentence under Booker.

We affirm the district court in all respects.

AFFIRMED.