RYAN, J.,
with whom STUCKY, J.,
joins (concurring in the judgment):
Relying on this Court’s holding in United States v. Toohey (Tookey II), the majority accepts the lower court’s holding that the significant appellate delay in this case violated Appellant’s Fifth Amendment right to due process. See United States v. Bush, 68 M.J. at 103 & n. 8 (C.A.A.F.2009) (finding due process violations when “the delay ‘is so egregious that tolerating it would adversely affect the public’s perception of the fairness and integrity of the military justice system’ ” (quoting Tookey II, 63 M.J. 353, 362 (C.A.A.F.2006))). The majority then finds that any constitutional error from the delay was harmless beyond a reasonable doubt because the record contains insufficient evidence that Appellant was prejudiced by the delay. Id. at 103-04. Though I agree with the majority that Appellant is not entitled to *105 relief, and therefore concur in the judgment, I do so because I do not believe that Appellant’s Fifth Amendment rights were violated. I write separately because I think the Court should have accepted the Government’s request to reconsider our appellate delay due process jurisprudence. This Court’s apparent ruling in Toohey II should be abandoned, and we should cease the practice of basing due process violations on public perception.
The Fifth Amendment states “No person shall be ... deprived of life, liberty, or property, without due process of law.” U.S. Const, amend. V. For convicted service-members with a right to an appeal, this prohibition grants a right to timely review of their convictions. United States v. Moreno, 63 M.J. 129, 132 (C.A.A.F.2006). To determine whether this right has been violated, this Court applies the four factors adopted by the Supreme Court in Barker v. Wingo, 407 U.S. 514, 530, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), for analyzing alleged violations of the Sixth Amendment Speedy Trial Clause: (1) the length of the delay; (2) the reasons for the delay; (3) the appellant’s assertion of his right to a timely appeal; and (4) the prejudice to the appellant. Moreno, 63 M.J. at 135; Toohey v. United States (Toohey I), 60 M.J. 100,102 (C.A.A.F.2004).
Our analysis of prejudice related to post-trial appellate delay considers three interests, each of which is tied to the delay and the appellant: “ ‘(1) prevention of oppressive incarceration pending appeal; (2) minimization of anxiety and concern of those convicted awaiting the outcome of their appeals; and (3) limitation of the possibility that a convicted person’s grounds for appeal, and his or her defenses in case of reversal and retrial, might be impaired.’ ” Moreno, 63 M.J. at 138-39 (quoting Rheuark v. Shaw, 628 F.2d 297, 303 n. 8 (5th Cir.1980)). Appellant did not allege and the lower court did not find any prejudice to these interests in this case. United States v. Bush, 67 M.J. 508, 513 (N.M.Ct.Crim.App.2008) (“The appellant does not assert and our review of the record did not reveal evidence that the appellant has suffered ongoing prejudice from oppressive incarceration or undue anxiety.”[1]). And although Appellant alleged employment prejudice, cf. United States v. Jones, 61 M.J. 80, 84 (C.A.A.F.2005) (finding prejudice where appellant demonstrated that the delay actually interfered with his ability to find specific post-military employment), this claim failed because Appellant provided no “independent evidence to support his claim that lack of a DD Form 214 impaired his ability to secure employment and did not demonstrate a valid reason for not doing so.” Bush, 68 M.J. at 101.
The absence of prejudice in this case should end the due process inquiry. But in Toohey II, relied upon by both the United States Navy-Marine Corps Court of Criminal Appeals (CCA) and the majority in this case, the Court appeared to recognize a due process violation even in the absence of prejudice, based on delay so egregious “it would adversely affect the public’s perception of the fairness and integrity of the military justice system.” Toohey II, 63 M.J. at 362.[2] The problem is that damage to the public’s perception of the military justice system, while *106 unfortunate, has no relation to a deprivation of life, liberty, or property of an appellant, and does not constitute prejudice to an appellant.[3] “Judges are not free, in defining ‘due process,’ to impose on law enforcement officials our ‘personal and private notions’ of fairness and to ‘disregard the limits that bind judges in their judicial function.’” United States v. Lovasco, 431 U.S. 783, 790, 97 S.Ct. 2044, 52 L.Ed.2d 752 (1977) (quoting Rochin v. California, 342 U.S. 165, 170, 72 S.Ct. 205, 96 L.Ed. 183 (1952)). In my view, Toohey II’s holding impermissibly expands the scope of a purported constitutional violation beyond the bounds of interests protected by the Fifth Amendment.
Moreover, the holding in Toohey II permits this Court to find due process violations without any showing of specific prejudice to an appellant. 63 M.J. at 359 (stating that “ ‘no single [Barker] factor [is] required to find that post-trial delay constitutes a due process violation’ ” (quoting Moreno, 63 M.J. at 136) (second bracketed interpolation in original)). Whatever the necessity or sufficiency of a particular Barker factor, though, and regardless whether there may be the rare and unusual situation where the prejudice factor can be either presumed or bypassed entirely, it does not follow that this Court may apparently substitute public perception as a new factor to replace a showing of prejudice. This practice puts our Court at odds with almost all other federal courts to have considered the issue.[4] Indeed, our post-trial-delay due process jurisprudence is based on the Supreme Court’s Sixth Amendment speedy trial jurisprudence, which requires a showing of prejudice to establish a speedy trial violation. Reed v. Farley, 512 U.S. 339, 353, 114 S.Ct. 2291, 129 L.Ed.2d 277 (1994). “[T]hat necessary ingredient is entirely missing here.” Id.
Nor is it clear how helpful Toohey II is to appellants in practice, as it necessarily leads to bizarre scenarios like the one presented today. First, the CCA decided that Appellant had failed to establish any constitutionally cognizable prejudice. Then, despite this failure, the CCA concluded that there was a due process violation based on public perception. Finally, the CCA awarded no relief because it was convinced, as this Court agrees, that the constitutional violation was harmless beyond a reasonable doubt — the Government met its burden because Appellant did not provide independent evidence of his lost employment opportunity.
This reasoning comes dangerously close to shifting onto Appellant the burden of proving harmlessness. Despite the assurances of the majority that Appellant “bore no burden of demonstrating prejudice,” the majority admits that the Government’s burden was *107 “more readily demonstrate[d]” in the absence of such evidence. 68 M.J. at 103-04; see also id. at 102 (“It is ... clear that it is solely the Government’s burden to persuade the court that constitutional error is harmless beyond a reasonable doubt. We have not deviated from th[is] black letter principle[ ] in developing our post-trial delay, due process jurisprudence.” (citations omitted)). The reality, then, is that in cases where prejudice is not part of the basis for the alleged due process violation, the Toohey II rule arguably shifts the burden to the appellant in the harmlessness analysis to prove the very prejudice the Court failed to require in the first place.
This situation could easily be avoided. If we were to require, like most of the federal circuits, a showing of prejudice before finding a due process violation, as the Supreme Court’s speedy trial jurisprudence suggests we should, we would eliminate this problem: If an appellant submits evidence of prejudice sufficient to show a constitutional violation, that evidence will already be part of the record and present for the Court’s consideration at the harmlessness analysis. This would not only be cleaner and simpler, but it also would follow the ordinary model of constitutional inquiry into an alleged due process violation. See, e.g., Gardner v. California, 393 U.S. 367, 370, 89 S.Ct. 580, 21 L.Ed.2d 601 (1969) (placing the burden on the petitioner to convince the appellate court of the error below); Chapman v. California, 386 U.S. 18, 24, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967) (requiring “the beneficiary of a constitutional error to prove beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained”); United States v. Harvey, 64 M.J. 13, 25 (C.A.A.F. 2006) (quoting United States v. Brewer, 61 M.J. 425, 432 (C.A.A.F.2005)).
I would revisit and either clarify or overrule Toohey II, but respectfully concur in the judgment.

. Although the CCA did not explicitly address it, Appellant has not alleged and the record does not indicate any impairment to his appeal or potential retrial.

. Although the Court may have intended to reinterpret, rather than replace, the Barker factors, see Bush, 68 MJ. at 103 n. 8 ("To clarify, the 'public perception' analysis is utilized in quantifying the appropriate weight that is to be given to Barker factors one (length of delay) and two (reasons for delay) when balancing all the factors.”), subsequent courts have nonetheless accepted the Toohey II opinion as a means of finding constitutional violations based only on public perception. See, e.g., United States v. Ab-dirahman, 66 M.J. 668, 683 (N.M.Ct.Crim.App. 2008) (treating adverse public perception as separate ground for relief); United States v. Bredsch-neider, 65 M.J. 739, 742 (N.M.Ct.Crim.App.2007) ("After weighing the four Barker factors, we conclude that the appellant has not suffered a Barker-type post-trial due process violation. However, even without specific prejudice, a due process violation may result if the 'delay is so egregious that tolerating it would adversely affect the public’s perception of the fairness and integrity of the military justice system.' " (quoting Toohey II, 63 M.J. at 362)). If this is not what the Court intended, that is all the more reason to revisit Toohey II.

. Further, I question whether Appellant has standing to complain of an injury to the public's perception of the military justice system. Generally, "a litigant must assert his or her own legal rights and interests, and cannot rest a claim to relief on the legal rights or interests of third parties.” Powers v. Ohio, 499 U.S. 400, 410, 111 S.Ct. 1364, 113 L.Ed.2d 411 (1991) (citing Dep’t of Labor v. Triplett, 494 U.S. 715, 720, 110 S.Ct. 1428, 108 L.Ed.2d 701 (1990); Singleton v. Wulff, 428 U.S. 106, 96 S.Ct. 2868, 49 L.Ed.2d 826 (1976)).

. Seven circuits and the District of Columbia (which also applies Fifth Amendment law) have held that prejudice is a required element of a timely appeal due process violation. See, e.g., United States v. Rodriguez, 259 Fed.Appx. 270, 277-78 (11th Cir.2007); United States v. DeLeon, 444 F.3d 41, 57 (1st Cir.2006); United States v. Gray, 52 Fed.Appx. 650, 654 (6th Cir.2002); United States v. Wiktor, 146 F.3d 815, 819 (10th Cir. 1998); United States v. Hawkins, 78 F.3d 348, 352 (8th Cir.1996); United States v. Kimmons, 917 F.2d 1011, 1014-15 (7th Cir.1990); United States v. Antoine, 906 F.2d 1379, 1382 (9th Cir. 1990); United States v. Alston, 412 A.2d 351, 357-58 (D.C.1980). One more circuit has applied a prejudice requirement when analyzing the Fourteenth Amendment's due process protections, see Heiser v. Ryan, 15 F.3d 299, 304 (3d Cir.1994), and would presumably apply such a requirement in a Fifth Amendment case. Only the Second Circuit appears to find a due process violation without a showing of prejudice, but has then required a showing of prejudice before that violation warrants a remedy. Elcock v. Henderson, 28 F.3d 276, 279 (2d Cir.1994). The Fourth, Fifth, and District of Columbia Circuits do not appear to have addressed this point directly. However, the Fifth Circuit has frequently stressed the importance of prejudice in analyzing alleged due process violations, calling it "the most important factor,” and emphasizing that it is ordinarily, though perhaps not absolutely, required. United States v. Bermea, 30 F.3d 1539, 1568-69 (5th Cir.1994). No court relies on public perception as a substitute for prejudice.